No. 92-468

IN THE SUPREME COURT OF THE STATE OF MONTANA

1993

STATE OF MONTANA,

       Plaintiff and Respondent,

-vs-

ANTHONY J. THOMPSON,

       Defendant and Appellant.

APPEAL FROM:    District Court of the Thirteenth Judicial District,
In and for the County of Yellowstone,
The Honorable William J. Speare, Judge presiding.

COUNSEL OF RECORD:

       For Appellant:

           William F. Hooks, Appellate Defender's Office,
           Helena, Montana

       For Respondent:

           Hon. Marc Racicot, Attorney General; John Paulson,
           Assistant Attorney General, Helena, Montana
           Dennis Paxinos, Yellowstone County Attorney; Dale
           Mrkich, Deputy Yellowstone County Attorney,
           Billings, Montana

FILED

JUN 10 1993

Filed: *Ed Smith*
CLERK OF SUPREME COURT
STATE OF MONTANA

Submitted on Briefs:   March 11, 1993

Decided:   June 10, 1993

Clerk

Justice John Conway Harrison delivered the Opinion of the Court.

Anthony Thompson (Thompson) was convicted of criminal sale of dangerous drugs, a felony, after a jury trial in the Thirteenth Judicial District Court, Yellowstone County, the Honorable William J. Speare presiding. Thompson appeals on the grounds that District Court error and prosecutor misconduct deprived him of his right to a fair trial. We affirm the conviction.

On August 21, 1991, Thompson was charged by information alleging that between July 29, 1991, and August 2, 1991, Thompson sold .5 grams of cocaine to a confidential informant working for the Billings, Montana, Police Department. This "controlled buy" was arranged by the police in the following manner.

The informant was equipped with a body wire transmitter and given $60 in bills that had been photocopied to record the serial numbers. He was taken to a vacant lot behind the Arcade Bar on Minnesota Avenue in Billings and instructed to approach a group of people in the vacant lot. A police detective in a nearby parked car observed the informant's movements and monitored his conversations on the transmitter. Another police detective was stationed in a nearby alley where he could observe the transaction without being seen.

The informant asked one of the men if he could sell him a quarter pound of marijuana. The man said it would take him a while to get it, and left the area. The informant was then approached by Thompson, who offered to sell him cocaine. Thompson and the informant got into Thompson's car, a white four-door Cadillac

2

sedan. Four bags of a white substance were arranged on the front seat. The informant selected a bag, paid Thompson $50, and returned to the police detective's car. The detective recovered the remaining $10 of the police department's money and tested the white substance with a Valtox kit. It tested positive for cocaine; this result later was confirmed by the Montana State Crime Laboratory in Missoula.

One of the police detectives observed the entire transaction through binoculars. He also heard the informant's conversations with Thompson and the man who agreed to sell him marijuana. Both detectives had been acquainted with Thompson previously and recognized his voice and his car. A license plate check confirmed that Thompson owned the car.

The police detectives obtained a warrant and searched Thompson's home the next day, but found neither the money the informant had used to buy the cocaine nor any other incriminating evidence. Although the detectives had kept no record of the date on which the informant had made the controlled buy, overtime reported on their time sheets indicated that it was on August 2, 1991. The search warrant was executed on August 3, 1991.

Thompson was formally charged on August 13 and arrested on August 17, 1991. At his first court appearance on August 21, 1991, he pled not guilty to the charge of criminal sale of dangerous drugs. Counsel was appointed for him. Thompson later offered to retain the appointed attorney, Joseph Zavaletta, on a private basis and signed an agreement to pay him $1,000 plus $500 if the case

3

went to trial. He paid Mr. Zavaletta $700 in February and March, 1992, but failed to complete the payments. Mr. Zavaletta represented Thompson at his trial in May but withdrew in July after Thompson told him that he intended to appeal his conviction based on ineffective assistance of counsel.

At his trial on May 26-27, 1992, Thompson presented an alibi defense based entirely on the testimony of a friend, Judalon Roundface. Thompson did not testify.

Roundface testified that during the week of July 29 through August 2, 1991, she had been Thompson's constant companion, driving his car and accompanying him wherever he went. He had asked her to help him, she said, because he had been beaten up a few days before and his face was so badly swollen that he could not see to drive. She picked him up at his home in the morning, Monday through Wednesday of that week and again on Friday, and drove him wherever he wanted to go. She kept the car overnight all week.

On Friday, August 2, Roundface testified, she picked Thompson up "at exactly 10:15." She and Thompson washed clothes at a laundromat that day, and then went to the Arcade Bar, arriving at four in the afternoon. Thompson remained at the Arcade Bar until it closed, Roundface said, while she left for a time to play the machines at another bar. She said that Thompson's car remained in a parking lot on Minnesota Avenue, north of the bar, and that she kept the keys until the end of that evening. By then, Thompson was feeling well enough to drive, so he left her at the bar and drove home himself.

4

The jury returned a verdict of guilty of criminal sale of dangerous drugs after about six hours of deliberation on May 27, 1992. Thompson raises the following issues on appeal:

1. Whether the District Court erred in holding conferences with counsel to discuss inquiries from the jury during its deliberations, without requiring Thompson's presence.

2. Whether the prosecutor, in his closing remarks, appealed improperly to the jury's sympathy and prejudice.

Thompson is barred from raising these issues, however, because he did not object to the alleged errors during trial.

Thompson acknowledges that defense counsel failed to object, during the trial, to the court's handling of the jury inquiries or to the prosecutor's closing remarks. Section 46-20-104(2), MCA (emphasis added), provides that:

Upon appeal from a judgment, the court may review the verdict or decision and any alleged error objected to which involves the merits or necessarily affects the judgment. Failure to make a timely objection during trial constitutes a waiver of the objection except as provided in 46-20-701(2).

The exceptions in § 46-20-701(2), MCA, require a defendant to establish first, that the alleged error was prejudicial as to his guilt or punishment; and second, that one of three conditions has been met. Thompson concedes that none of the three statutory conditions apply to his situation, but he insists that under the "plain error" doctrine this Court nevertheless may exercise its power of discretionary review. As a general rule, this Court will not entertain issues not raised at trial, and if a defendant fails to lodge a timely objection, he will not be heard on appeal. State v. Wilkins (1987), 229 Mont. 78, 746 P.2d 588. General rules are

5

not without exception, however, and in Halldorson v. Halldorson (1977), 175 Mont. 170, 573 P.2d 169, we recognized that appellate courts have a duty to assure that the substantial rights of the parties have not been infringed.

We will invoke plain error only in exceptional cases, when it is necessary to ensure a fair and impartial trial. Wilkins, 746 P.2d at 589. We invoked plain error in Wilkins because the district court repeatedly reminded the defendant that he had a right to take the stand, thus drawing the jury's attention to the fact that he had chosen not to testify and thereby infringing on the defendant's right against self-incrimination.

Here, in contrast, Thompson has not shown that either of the alleged errors affected a substantial right or that he was deprived of a fair trial. With regard to the jury inquiries, the facts are as follows.

After the jury had deliberated for about an hour, the foreman sent a note to the judge stating that "we would like to know if the search warrant was issued before or after the drug purchase." After an extended discussion with defense counsel and the prosecutor, the judge wrote the jury a note saying that the search warrant was issued on Friday, August 2, 1991, and executed on August 3, 1991. He stated for the record that "the court has gathered with counsel, shown them the request, and it has been agreed to answer as follows . . . ."

Several hours later, the jury sent in another question, asking whether they could see the "original map" that was drawn of the

6

Arcade Bar area. The judge discussed this request briefly with counsel and sent the jury a note saying that they could not see the map because it was not in evidence. Based on the record, no other answer could have been given. Therefore, Thompson's substantial rights were not adversely affected by his absence.

The second alleged error occurred when the prosecutor concluded his rebuttal closing argument with the following comment:

> Ladies and gentlemen of the jury, drug cases are difficult cases because drug abuse is a national issue. Drug sellers are the focus, or ought to be the focus, of the war on drugs. With your verdict you can make this community a population with one fewer drug sellers [sic] than it used to have.

Thompson argues that it is improper for a prosecutor to urge a jury "to assume the mantle of the community's conscience and, in that capacity, to convict an accused." Quoting a federal court of appeals opinion, he suggests that "jurors may be persuaded by such appeals to believe that, by convicting a defendant, they will assist in the solution of some pressing social problem." United States v. Monaghan (D.C. Cir. 1984), 741 F.2d 1434, 1441.

In Monaghan, however, the court held that "overstepping the bounds of proper advocacy" does not necessarily violate an accused's right to due process. In order to "rise to constitutional proportions," the court said, an improper prosecutorial remark must cause substantial prejudice to the defendant. 741 F.2d at 1443. Here, while the prosecutor's remarks may have been objectionable, the record contains no evidence that his closing remarks caused substantial prejudice to the defendant. Therefore, absent an objection, the remarks are not a basis for

7

invoking the plain error doctrine.

As there is no basis for invoking the plain error doctrine, we hold that Thompson's failure to object to the alleged errors at trial bars him from raising them on appeal.

Affirmed.

_____
Justice

We concur:

_____
Chief Justice

_____

_____

_____
Justices

Justice William E. Hunt, Sr., specially concurring.

I concur in the result of the majority opinion, but not with all that is said therein.

_____
Justice

8

June 10, 1993

<u>CERTIFICATE OF SERVICE</u>

I hereby certify that the following order was sent by United States mail, prepaid, to the following named:

William Hooks, Attorney at Law
State Appellate Public Defender's Office
Capitol Station
Helena, MT 59620

Hon. Marc Racicot, Attorney General
John Paulson, Assistant
215 N. Sanders, Justice Bldg.
Helena, MT 59620

Dennis Paxinos, County Attorney
Dale Mrkich, Deputy
P.O. Box 35025
Billings, MT 59107

ED SMITH
CLERK OF THE SUPREME COURT
STATE OF MONTANA

BY: _M. Tudor_
    Deputy