No. 97-436

IN THE SUPREME COURT OF THE STATE OF MONTANA

1998 MT 173

STATE OF MONTANA,

Plaintiff and Respondent,

v.

DONITA HERRERA,

Defendant and Appellant.

APPEAL FROM: District Court of the Thirteenth Judicial District,

In and for the County of Yellowstone,

The Honorable Russell C. Fagg, Judge presiding.

COUNSEL OF RECORD:

For Appellant:

Carrie L. Garber, Yellowstone County Public Defenders Office,

Billings, Montana

For Respondent:

Hon. Joseph P. Mazurek, Attorney General, Cregg W. Coughlin, Ass't

Attorney General, Helena, Montana

Dennis Paxinos, Yellowstone County Attorney, Billings, Montana

Submitted on Briefs: May 14, 1998

Decided: July 15, 1998

Filed:

_____

Clerk

Justice W. William Leaphart delivered the Opinion of the Court.

**¶1 Donita Herrera (Donita) appeals from the decision of the Thirteenth Judicial District Court, Yellowstone County, granting in part and denying in part her motion to suppress evidence obtained during a search of an automobile and her purse. In addition, Donita requests that this Court review the issue of whether the officers legally stopped the automobile in which Donita was a passenger. Donita asserts that she presented this issue to the District Court during an evidentiary hearing, but that the District Court failed to address the issue in its findings of fact and conclusions of**

law. We deny Donita's request to review the issue of the legality of the automobile stop and affirm the decision of the District Court denying Donita's motion to suppress.

## Factual and Procedural Background

¶2 On the evening of June 13, 1996, Donita went to Gabby's Casino where she met her friend Anne Ditzel (Anne). Anne was accompanied by Arnold Muhs (Arnold). Donita asked Anne if she would give her a ride to a friend's house. They left Gabby's at approximately 10:00 p.m. Anne was driving, Donita sat in the front passenger seat and Arnold sat in the backseat. They made one stop at the Lobby Liquor Store, then proceeded south on 27th Street.

¶3 Officer Hirst was stopped at the corner of 1st Avenue and 27th Street when he received a call from an undercover officer. The undercover officer indicated that a blue Dodge hatchback was traveling two vehicles in front of Officer Hirst. The undercover officer further advised Officer Hirst that he "knew who the person was in the car" and that Officer Hirst "should pay particular attention to that person." Officer Hirst followed the blue vehicle until it turned down an alley. Officer Hirst testified that, when the car turned into the alley, the driver shut off the headlights then continued to travel through the alley. Officer Hirst stopped at the north end of the alley while he observed Anne's vehicle.

¶4 Anne testified that she drove into the alley and then into the driveway which belonged to John, a mutual friend of Anne and Donita. Anne parked the car, turned off the headlights and went to knock on the door to see if anyone was home. When no one answered the door, Anne returned to the vehicle, backed out of the driveway, proceeded down the alley and turned right onto the street.

¶5 Upon seeing Anne's vehicle pull out of the parking spot, Officer Hirst began following Anne's vehicle through the alley. When Anne turned onto the street, Officer Hirst activated his overhead lights and pulled the vehicle over. Officer Hirst testified at trial that he pulled the vehicle over based on his earlier observation of the vehicle traveling at night without its headlights.

¶6 Officer Hirst approached the vehicle and requested Anne's driver's license. Anne indicated that she did not have identification, and gave the officer a false name.

About this time, Officer Paharik arrived on the scene. Officer Paharik recognized Anne and told Officer Hirst her correct identity. Anne explained that she gave a false name because she believed there was an outstanding warrant for her arrest. Officer Hirst placed Anne under arrest for the offense of obstructing a peace officer and based on the outstanding warrant.

¶7 While Officer Hirst placed Anne in the back of his patrol car, Officer Paharik went to the passenger side of the vehicle to question Donita. Donita identified herself and gave Officer Paharik her birth date, but explained that she did not have any identification with her. Officer Paharik asked Donita to exit the vehicle. He testified that when he shined his flashlight through the windshield, he saw, underneath the driver's seat, a rolled up baggie which contained a brownish powdery substance and a brown pouch next to the baggie. Upon seeing the suspicious items, Officer Paharik began searching the vehicle. Inside the pouch, Officer Paharik found syringes, a silver container and what he described as a "coke spoon."

¶8 Donita, believing she was free to leave the scene, began to walk away to call for a ride. However, when Officer Paharik found the drug paraphernalia, he requested that she come back and remain near the vehicle. Donita returned to the scene, set her purse and sack of beer on the hood of the car and waited while Officer Paharik conducted the search. Officer Paharik found what he described as a black checkbook cover sitting on the floor of the passenger side where Donita had been sitting. Although he testified that he did not notice anything suspicious about the checkbook cover, he found syringes when he looked inside. When he finished searching the passenger side of the vehicle, Officer Paharik indicated that he needed to check Donita's purse for identification. Officer Paharik testified that Donita consented to letting him search her purse. In addition, Officer Paharik testified that when he found bindles containing a yellowish white substance inside the purse, Donita asked if he needed a warrant to look in her purse. Donita, on the other hand, testified that as soon as Officer Paharik sought permission to look in her purse, she asked if he needed a warrant. Donita further testified that Officer Paharik responded that he did not need a warrant because he could search the purse as part of the search of the car.

¶9 After finding the bindles in Donita's purse, Officer Paharik called a third officer to the scene. The third officer placed Donita under arrest for possession of dangerous drugs and transported her to the Yellowstone County Detention Facility for

processing. Donita was charged with one count of possessing dangerous drugs, a felony, and one count of possessing drug paraphernalia, a misdemeanor.

¶10 Donita moved to suppress the evidence obtained by the officers, arguing that the search of her purse was conducted without a warrant and not pursuant to an exception to the warrant requirement. Donita's motion did not challenge the legality of the traffic stop. Although Anne and Donita were charged separately, the District Court held a combined evidentiary hearing for Anne and Donita. Anne, in her motion to suppress, had raised the issue of whether the investigatory stop by Officer Hirst was legal. Therefore, during the course of the hearing, the issue of whether Officer Hirst had grounds for initiating the stop of the vehicle was discussed. As a result, Donita addressed the issue in her proposed findings of fact and conclusions of law. The District Court, however, despite holding a combined hearing, issued separate findings and conclusions for Anne and Donita. In its findings of fact and conclusions of law on Donita's motion, the court limited its order to the suppression issues presented by Donita in her motion and did not discuss the issue of whether Officer Hirst had grounds to stop the vehicle. The District Court suppressed the drug paraphernalia found in the checkbook cover, but determined that Donita consented to the search of her purse. Thereafter, Donita pled guilty to the offense of possessing dangerous drugs, reserving her right to appeal the portion of the District Court's order denying her motion to suppress. Donita presents three issues on appeal:

¶11 1) Did the District Court err in failing to address the issue of whether Officer Hirst had grounds to stop the vehicle?

¶12 2) Did the District Court err in holding that Officer Hirst had grounds to stop the vehicle?

¶13 3) Did the District Court err in denying Donita's motion to suppress the evidence found in her purse?

Discussion

I

¶14 1) Did the District Court err in failing to address the issue of whether Officer Hirst had grounds to stop the vehicle?

¶15 Donita argues that the District Court erred in failing to address the issue of whether Officer Hirst had a reasonable, articulable suspicion warranting the stop of Anne's vehicle. In support of her argument, Donita asserts that the record reveals that the validity of the traffic stop was at issue at the evidentiary hearing. In addition, Donita presented proposed findings of fact and conclusions of law which stated that the traffic stop was not supported by a reasonable, articulable suspicion that the occupants of the car had been or were engaged in criminal activity. Alternatively, Donita requests that this Court review the issue pursuant to the plain error doctrine.

¶16 The State of Montana (State), however, argues that Donita did not properly raise or preserve this issue in the District Court. The State contends that this Court should deny Donita's request for review of this issue for two reasons. First, Donita did not raise the issue in her motion to suppress. The State argues that the reason the issue was litigated at the hearing is that Anne raised the issue in her motion to suppress. The State points out that the District Court made findings and conclusions regarding the issue in its order denying Anne's motions to suppress, but did not address the issue in its findings and conclusions on Donita's motion. Second, Donita did not object to the alleged oversight and thereby failed to give the District Court an opportunity to amend its findings and conclusions. Rather, she entered her guilty plea and now raises the issue for the first time on appeal.

¶17 Section 46-20-104, MCA, provides that an appeal for purposes of criminal procedure "may be taken by the defendant only from a final judgment of conviction and orders after judgment which affect the substantial rights of the defendant." Moreover, that section provides that "[u]pon appeal from a judgment, the court may review the verdict or decision and any alleged error objected to which involves the merits or necessarily affects the judgment. *Failure to make a timely objection during trial constitutes a waiver of the objection* except as provided in 46-20-701(2)." Section 46-20-104(2), MCA (emphasis added). This Court has clearly established that it will consider for review only those issues raised in the pleadings or otherwise before the district court. Matter of Estate of Rogers (1986), 223 Mont. 78, 82, 725 P.2d 544, 546. We explained in State v. Walker (1966), 148 Mont. 216, 223, 419 P.2d 300, 304, and affirmed in State v. Long (1986), 223 Mont 502, 726 P.2d 1364, that "[a] District Court will not be put in error where it was not accorded an opportunity to correct itself." Long, 223 Mont. at 506, 726 P.2d at 1366. Thus, we determine that Donita's failure to raise the issue of the legality of the traffic stop in her motion to suppress

**and her further failure to give the District Court an opportunity to amend its findings and conclusions preclude her from raising this issue on appeal.**

**¶18 We also reject Donita's alternative request that we review the issue pursuant to the plain error doctrine. As a general rule, this Court will not review an issue which the defendant fails to present to the district court or an issue to which the defendant fails to timely object. State v. Thompson (1993), 259 Mont. 62, 65, 853 P.2d 1188, 1190. However, one exception to that general rule is the plain error doctrine set forth at § 46-20-701, MCA.**

**¶19 Section 46-20-701(2), MCA, provides:**

> Any error, defect, irregularity, or variance that does not affect substantial rights must be disregarded. A claim alleging an error affecting jurisdictional or constitutional rights may not be noticed on appeal if the alleged error was not objected to as provided in 46-20-104, unless the convicted person establishes that the error was prejudicial as to the convicted person's guilt or punishment and that:
>
> (a) the right asserted in the claim did not exist at the time of the trial and has been determined to be retroactive in its application;
>
> (b) the prosecutor, the judge, or a law enforcement agency suppressed evidence from the convicted person or the convicted person's attorney that prevented the claim from being raised and disposed of; or
>
> (c) material and controlling facts upon which the claim is predicated were not known to the convicted person or the convicted person's attorney and could not have been ascertained by the exercise of reasonable diligence.

**Donita states that her "fundamental constitutional right against unreasonable searches and seizures is implicated by the investigative traffic stop." Thus, she contends that she raised an alleged error implicating a constitutional right. However, we determine that Donita fails to satisfy the required elements of § 46-20-701(2), MCA. Specifically, the material and controlling facts regarding the traffic stop were known to Donita and her attorney at the time of filing her motion to suppress. Yet, Donita failed to assert a claim regarding the traffic stop at the time of filing that**

motion. Second, Donita has not alleged that she was prevented from raising the claim due to suppression of evidence by the prosecutor, the judge or law enforcement.

¶20 Having failed to satisfy the requirements of § 46-20-701, MCA, we refuse to review Donita's claim pursuant to the plain error doctrine. Moreover, we reject Donita's request that we invoke our common law plain error review pursuant to State v. Finley (1996), 276 Mont. 126, 137-38, 915 P.2d 208, 215. As we explained in Finley, we will use our common law plain error review sparingly and only where failing to review a claimed error may result in a manifest miscarriage of justice, may leave unsettled the question of the fundamental fairness of the proceedings, or may compromise the integrity of the judicial process. Finley, 276 Mont. at 137, 915 P.2d at 215. This is not such a case.

¶21 In sum, we determine that Donita did not properly raise the issue of the legality of the traffic stop in her motion to suppress, nor did she object to the District Court's failure to address the issue in its findings and conclusions. Therefore, Donita is precluded from raising the issue on appeal. Furthermore, we determine that Donita fails to satisfy the prerequisites for obtaining a plain error review. We hold that the District Court did not err in failing to address the issue of whether Officer Hirst had grounds to stop the vehicle. Accordingly, we do not reach the merits of Donita's second issue.

II

¶22 3) Did the District Court err in denying Donita's motion to suppress the evidence found in her purse?

¶23 The Fourth Amendment of the United States Constitution and Article II, Section 11 of the Montana Constitution prohibit searches and seizures by law enforcement without a valid warrant. In addition, Montana statutory law at § 46-5-101, MCA, provides that "[a] search of a person, object, or place may be made and evidence, contraband, and persons may be seized in accordance with Title 46 when a search is made: (1) by the authority of a search warrant; or (2) in accordance with judicially recognized exceptions to the warrant requirement." Consent to a search is a judicially recognized exception to the warrant requirement. State v. Kim (1989), 239 Mont. 189, 779 P.2d 512. The State has the burden of showing that the defendant's consent was given voluntarily. Kim, 239 Mont. at 196, 779 P.2d at 517.

"Voluntariness is a factual issue and is determined from the totality of the circumstances." <u>Kim</u>, 239 Mont. at 196, 779 P.2d at 517 (citing Schneckloth v. Bustamonte (1973), 412 U.S. 218, 248-49, 93 S.Ct. 2041, 2058-59, 36 L.Ed.2d 854).

¶24 The parties agree that Officer Paharik searched Donita's purse without a warrant. Donita argues that the search was not conducted pursuant to a judicially recognized exception to the warrant requirement and therefore the search was illegal. In support of her argument, Donita contends that when Officer Paharik requested to look in her purse, she asked Officer Paharik if he needed a warrant and he responded that he did not. Donita also contends that she did not consent to Officer Paharik's search of her purse. Officer Paharik, on the other hand, testified that after finding the drugs and drug paraphernalia in the vehicle, he asked to look in Donita's purse. Officer Paharik further testified that Donita consented to the search and it was not until after he found the bindles in Donita's purse that she asked him if he needed a warrant.

¶25 The District Court, based on the evidence presented at the hearing, concluded that Donita voluntarily permitted the officer to search her purse and thus the evidence was admissible. When considering a court's ruling on a motion to suppress, this Court considers whether the record contains substantial credible evidence to support the district court's findings, and whether those findings were applied correctly as a matter of law. <u>Kim</u>, 239 Mont at 196, 779 P.2d at 517 (citing State v. Beach (1985), 217 Mont. 132, 147, 705 P.2d 94, 103). The trial court is the finder of fact at a suppression hearing and the credibility of the witnesses is properly determined by the trial court that heard the testimony and observed the witnesses. <u>Kim</u>, 239 Mont. at 196, 779 P.2d at 517.

¶26 Donita contends that the District Court's conclusions regarding the voluntariness of her consent are not supported by her testimony at the hearing. Specifically, she argues that, while she may not have felt compelled to remain at the scene initially, after Officer Paharik asked her to return and stand by the car, she did not feel free to leave. Additionally, Donita maintains that Officer Paharik attempted to manipulate her into consenting to his search of the purse by telling her that he did not need a warrant.

¶27 The State argues that the District Court properly concluded that, based on the totality of the circumstances, Donita's consent was given voluntarily. The State points

to Officer Paharik's testimony that he did not order Donita to give him the purse, nor did he coerce her. It was his testimony that Donita consented to the search of the purse. Furthermore, Officer Paharik recalled that it was not until after he found the bindles in Donita's purse that she asked him if he needed a warrant.

¶28 The issue before the District Court was one of credibility. The District Court found Officer Paharik's recollection of the events more credible than Donita's. We determine that the record contains substantial credible evidence to support the District Court's findings. Since the District Court is in a better position to determine the credibility of the witnesses, this Court will not disturb the District Court's findings if they are supported by substantial credible evidence. We determine that the District Court did not err in finding that, based on the totality of the circumstances, Donita voluntarily consented to the search of her purse. Accordingly, we hold that the District Court did not err in denying Donita's motion to suppress. Affirmed.

/S/ W. WILLIAM LEAPHART

We concur:

/S/ J. A. TURNAGE

/S/ KARLA M. GRAY

/S/ JIM REGNIER

/S/ TERRY N. TRIEWEILER