FILED

December 30 2008

*Ed Smith*
CLERK OF THE SUPREME COURT
STATE OF MONTANA

DA 06-0367

IN THE SUPREME COURT OF THE STATE OF MONTANA

2008 MT 452

STATE OF MONTANA,

      Plaintiff and Appellee,

  v.

DANIEL BRANDEN LALLY,

      Defendant and Appellant.

APPEAL FROM:    District Court of the Fourth Judicial District,
In and For the County of Missoula, Cause No. DC-2005-150
Honorable Douglas G. Harkin, Presiding Judge

COUNSEL OF RECORD:

      For Appellant:

          Kathleen Foley, Boggs & Foley Law Office, Missoula, Montana

      For Appellee:

          Hon. Mike McGrath, Montana Attorney General, Carol E. Schmidt,
Assistant Attorney General, Helena, Montana

          Fred Van Valkenburg, Missoula County Attorney, Karen S. Townsend,
Deputy County Attorney, Missoula, Montana

Submitted on Briefs:  May 23, 2007

Decided:  December 30, 2008

Filed:

_____
Clerk

Justice James C. Nelson delivered the Opinion of the Court.

¶1　　The State charged Daniel Lally in the Fourth Judicial District Court, Missoula County, with two counts of felony theft. Lally pleaded not guilty and thereafter filed a motion to exclude photo-identification testimony by one of the police officers involved in the investigation. The District Court denied the motion. Lally then entered into a plea agreement, reserving his right to appeal the District Court's adverse ruling. For the reasons which follow, we affirm the District Court's decision.

## BACKGROUND

¶2　　At approximately 12:30 a.m. on November 2, 2004, City of Missoula Police Officer Timothy Richtmyer was patrolling traffic on North Russell Street when he observed two all-terrain vehicles (a motorcycle and a four-wheeler) being driven down the street at a high rate of speed and without any headlights.

¶3　　Richtmyer pursued the vehicles and attempted, unsuccessfully, to initiate a traffic stop. He radioed for assistance and continued the chase. The driver of the four-wheeler eventually pulled off to the side of the road, but the driver of the motorcycle continued to flee. Believing the driver of the four-wheeler would wait at that location until law enforcement arrived, Richtmyer maintained his pursuit of the motorcycle, with his lights and siren activated.

¶4　　The motorcycle driver sped up and then turned onto a side street, where the driver apparently lost control while attempting to make a U-turn. Upon arriving at the scene, Richtmyer observed that the motorcycle was tipped over. He stepped out of his patrol car, identified himself as a police officer, and instructed the driver to stop. The driver,

2

however, righted the motorcycle and drove back the way he had come. As Richtmyer attempted to follow, he drove over a curb which caused one of his tires to go flat.

¶5 Meanwhile, once Richtmyer passed by the four-wheeler which had pulled off to the side of the road, the driver of that vehicle took off. Consequently, neither driver was apprehended that night.

¶6 The four-wheeler was found abandoned later in the day, and it was determined that the registered owner, Patricia W., lived outside the City limits. Thus, the Missoula County Sheriff's Office took over the investigation. During the evening of November 2, Deputy Jeremy Meeder interviewed Patricia and her minor son John at their residence. They reported that the all-terrain vehicles had been stolen, and they named two potential suspects: Ryan C. and Lally. At this point, Meeder considered John a potential suspect as well; thus, he took a picture of John during the course of the interview. Meeder then attempted to contact Ryan and Lally. Lally was unavailable, but Meeder was able to meet with Ryan. Meeder did not, however, take a picture of Ryan at this time.

¶7 Meeder returned to the station house to file a report. Upon learning that Richtmyer was on duty, Meeder obtained a mugshot of Lally and took it and the photograph of John over to Richtmyer at the Missoula Police Department to ask whether either of these individuals had been involved in the pursuit. Notably, the Sheriff's Office had computer equipment for creating a standard photo lineup consisting of six or more persons (one of whom is a suspect) having similar features; however, Meeder did not believe a photo lineup was necessary because he was planning to show the two photographs to someone he considered to be "a trained law enforcement officer."

¶8     On making contact with Richtmyer at the police station, Meeder handed him the photographs and stated: "These are two possible suspects. Do either of them look familiar?" Richtmyer first looked at the photograph of John and stated that he did not recognize John. Richtmyer then looked at Lally's mugshot and stated that he believed Lally was the driver of the motorcycle.

¶9     Based on its investigation, the State charged Lally on April 14, 2005, with two counts of felony theft, in violation of § 45-6-301, MCA. As noted, Lally initially pleaded not guilty and filed a motion to exclude any testimony by Richtmyer regarding his photo identification of Lally. Lally argued that the manner of identification was so suggestive as to create a grave risk of irreparable misidentification, in violation of Lally's right to due process.

¶10     The District Court held an evidentiary hearing on Lally's motion, at which time Richtmyer and Meeder testified concerning the events described above. In addition, Lally called Dr. Geoffrey Loftus, a professor of psychology at the University of Washington, to testify as an expert on the subjects of human perception and memory and witness-identification procedures. Ultimately, the District Court entered its Findings of Fact, Conclusions of Law, and Order on December 29, 2005, denying Lally's motion. The court's reasoning is discussed below where relevant.

¶11     Lally then withdrew his pleas of not guilty and entered pleas of nolo contendere, reserving his right to appeal the denial of his motion to exclude. The District Court sentenced him to the Department of Corrections for a term of five years on each count, said sentences to run concurrently. Lally now appeals.

## ISSUE

¶12 The sole issue on appeal is whether the District Court erred in denying Lally's motion to exclude photo-identification testimony by Richtmyer.

## STANDARDS OF REVIEW

¶13 We review a district court's findings of fact under the clearly erroneous standard. *State v. Weaver*, 2008 MT 86, ¶ 9, 342 Mont. 196, ¶ 9, 179 P.3d 534, ¶ 9. A finding is clearly erroneous if it is not supported by substantial evidence, if the court has misapprehended the effect of the evidence, or if our review of the record leaves us with a definite and firm conviction that a mistake has been made. *Weaver*, ¶ 9. We review a district court's conclusions of law de novo to determine whether they are correct. *State v. Milligan*, 2008 MT 375, ¶ 16, 346 Mont. 491, ¶ 16, ___ P.3d ___, ¶ 16. Lastly, whether a criminal defendant's constitutional right to due process has been violated is a question of constitutional law. *In re A.S.*, 2004 MT 62, ¶ 9, 320 Mont. 268, ¶ 9, 87 P.3d 408, ¶ 9. This Court's review of a question of constitutional law is plenary. *State v. West*, 2008 MT 338, ¶ 13, 346 Mont. 244, ¶ 13, 194 P.3d 683, ¶ 13.

## DISCUSSION

¶14 A defendant's constitutional right to due process bars the admission of evidence deriving from suggestive identification procedures where there is a substantial likelihood of irreparable misidentification. *See Neil v. Biggers*, 409 U.S. 188, 196-98, 93 S. Ct. 375, 380-82 (1972); *State v. Lara*, 179 Mont. 201, 204-05, 587 P.2d 930, 931-32 (1978); *State v. Higley*, 190 Mont. 412, 420-21, 621 P.2d 1043, 1049 (1980); *State v. Schoffner*, 248

5

Mont. 260, 265-66, 811 P.2d 548, 552 (1991). In the present case, we are dealing with photographs, and

> improper employment of photographs by police may sometimes cause witnesses to err in identifying criminals. A witness may have obtained only a brief glimpse of a criminal, or may have seen him under poor conditions. Even if the police subsequently follow the most correct photographic identification procedures and show him the pictures of a number of individuals without indicating whom they suspect, there is some danger that the witness may make an incorrect identification. This danger will be increased if the police display to the witness only the picture of a single individual who generally resembles the person he saw, or if they show him the pictures of several persons among which the photograph of a single such individual recurs or is in some way emphasized. The chance of misidentification is also heightened if the police indicate to the witness that they have other evidence that one of the persons pictured committed the crime. Regardless of how the initial misidentification comes about, the witness thereafter is apt to retain in his memory the image of the photograph rather than of the person actually seen, reducing the trustworthiness of subsequent lineup or courtroom identification.

*Simmons v. United States*, 390 U.S. 377, 383-84, 88 S. Ct. 967, 971 (1968) (footnotes omitted). The admission of evidence of a photo identification (or a lineup or a showup) does not, without more, violate due process; rather, "[i]t is the likelihood of misidentification which violates a defendant's right to due process." *Biggers*, 409 U.S. at 198, 93 S. Ct. at 381-82.

¶15 We apply a two-part test to determine whether an in-court identification based on a pretrial identification is admissible. We first determine whether the pretrial identification procedure was impermissibly suggestive. If it was, we then determine, based on the totality of the circumstances, whether the suggestive procedure created a substantial likelihood of irreparable misidentification. *See Biggers*, 409 U.S. at 198-99, 93 S. Ct. at 381-82; *State v. Baldwin*, 2003 MT 346, ¶ 14, 318 Mont. 489, ¶ 14, 81 P.3d

488, ¶ 14; *State v. DuBray*, 2003 MT 255, ¶ 58, 317 Mont. 377, ¶ 58, 77 P.3d 247, ¶ 58; *State v. Bingman*, 2002 MT 350, ¶ 21, 313 Mont. 376, ¶ 21, 61 P.3d 153, ¶ 21.

¶16 In the present case, it is debatable whether the identification procedure used by Deputy Meeder was impermissibly suggestive. Meeder handed Richtmyer two photographs (black and white copies of which are included in the record) and identified the individuals shown as "two possible suspects." The photograph of Lally was "in some way emphasized," *Simmons*, 390 U.S. at 383, 88 S. Ct. at 971, in that it was a mugshot (front view and side view) of him holding a placard which stated "SHERIFF'S OFFICE MISSOULA MT" and gave the date and Lally's booking identification number. John's photograph, by contrast, showed him standing in his home with furniture and wall pictures in the background. Aside from the fact that Lally and John are both Caucasian males who appear to be relatively close in age, their features (including hair color and facial hair) are dissimilar. As Meeder conceded during the District Court hearing, this does not constitute a standard photo lineup. Moreover, Meeder seemed to recognize that this sort of procedure would be inappropriate where the witness was John Q. Public, as opposed to "a trained law enforcement officer."

¶17 The State, on the other hand, emphasizes the fact that Richtmyer was a trained law enforcement officer who had been a Missoula police officer for about eight months, prior to which he worked as a detention officer at the Missoula County Detention Facility for about one and a half years. As such, the State posits that Richtmyer "would not be as vulnerable to the suggestive nature of the [mugshot] as would the general public." *Cf. State v. Campbell*, 219 Mont. 194, 200, 711 P.2d 1357, 1361 (1985) ("[The witnesses]

7

were trained law enforcement professionals that routinely encountered suspects in criminal investigations on a one-to-one basis. As such, they were not as vulnerable to the suggestive nature of the [one-to-one showup] procedure as the general public would be."). The State also argues that any variations in appearance between Lally and John, such as eye color and hair color, are not entitled to dispositive weight. The State points out that Richtmyer observed the motorcycle driver from a distance of 30 to 50 feet and in somewhat low-light conditions. Therefore, the State contends, Richtmyer would not have based his identification of Lally on features such as eye color and hair color.

¶18 Ultimately, we need not decide whether Deputy Meeder's identification procedure was impermissibly suggestive as applied to Richtmyer under the circumstances existing at the time. Even assuming, arguendo, that it was impermissibly suggestive, we conclude on the specific facts of this case that the procedure did not create a substantial likelihood of irreparable misidentification.

¶19 The "central question" under the second prong of the admissibility test is "whether under the 'totality of the circumstances' the identification was reliable even though the confrontation procedure was suggestive." *Biggers*, 409 U.S. at 199, 93 S. Ct. at 382. The factors to be considered in evaluating the likelihood of misidentification include the opportunity of the witness to view the criminal at the time of the crime, the witness's degree of attention, the accuracy of the witness's prior description of the criminal, the level of certainty demonstrated by the witness at the confrontation (i.e., when the identification was made), and the length of time between the crime and the confrontation. *See Biggers*, 409 U.S. at 199-200, 93 S. Ct. at 382; *State v. Clark*, 2000 MT 40, ¶ 21, 298

8

Mont. 300, ¶ 21, 997 P.2d 107, ¶ 21, *overruled in part on other grounds*, *State v. Herman*, 2008 MT 187, ¶ 12 n. 1, 343 Mont. 494, ¶ 12 n. 1, 188 P.3d 978, ¶ 12 n. 1.

¶20     The District Court determined that all but the third of these factors were satisfied here. Specifically, the court found as follows:  (1) Richtmyer had "a good opportunity" to view the driver of the motorcycle; (2) Richtmyer had "ample cause" to look closely at the driver, since the driver was suspected of violating the law; (3) Richtmyer did not provide a description of the driver prior to viewing the two photographs provided by Meeder; (4) Richtmyer had "a relatively high degree of certainty" when he identified Lally as the motorcycle driver; and (5) Richtmyer viewed the photographs "within several hours" of viewing the driver.

¶21     Lally contends that the first, second, and fourth findings are clearly erroneous. In support of this contention, he relies largely on the testimony of Dr. Loftus. For instance, Loftus stated that the conditions under which Richtmyer viewed the motorcycle driver were "not ideal" for being able to perceive and remember. Moreover, Loftus opined that Richtmyer "had various things that were competing for his attention" when he observed the driver. As for Richtmyer's failure to provide a description of the driver in his incident report, Loftus suggested that one possibility was that Richtmyer "simply didn't have a very good image or memory of the perpetrator to begin with." (Richtmyer had testified that he could not recall why he did not describe the driver in his report.) In addition, Lally cites Loftus's discussion of how a person can supplement his or her memory of an event based on post-event information.

9

¶22 In essence, Lally argues that Loftus's testimony supports findings of fact different from those made by the District Court. A finding, however, is not clearly erroneous simply because there is evidence in the record supporting a different finding. Rather, as stated above, a finding is clearly erroneous if it is not supported by substantial evidence, if the court has misapprehended the effect of the evidence, or if our review of the record leaves us with a definite and firm conviction that a mistake has been made. *Weaver*, ¶ 9; *see also Montanans for Justice v. State ex rel. McGrath*, 2006 MT 277, ¶ 78, 334 Mont. 237, ¶ 78, 146 P.3d 759, ¶ 78 ("[W]e review a district court's findings to determine whether substantial evidence supports those findings, *not contrary findings*."). Moreover, in this connection, it is the province of the District Court to weigh the evidence and resolve any conflicts between the parties' positions, and this Court will not second-guess the District Court's determinations regarding the strength and weight of conflicting testimony. *Montanans for Justice*, ¶ 78.

¶23 The evidence in the record establishes that Richtmyer and the motorcycle driver, who was not wearing a helmet, had "face-to-face contact" over a distance of 30 to 50 feet while the driver was bringing the motorcycle back to an upright position. There were no street lights in the area, but the patrol car's lights were aimed 40 to 45 degrees to the side of the driver. Richtmyer did not get a long look at the driver's face because the driver remounted the motorcycle and took off relatively quickly. On the other hand, however, Richtmyer had a high degree of attention on the driver during their face-to-face contact given that he had pursued the driver for some time with the purpose of apprehending him and given that he was facing the driver, ordering him to stop, and observing the driver's

next move. Richtmyer viewed the photographs of Lally and John sometime the following evening (roughly 18 to 24 hours following the incident). He did not recognize John, but he believed Lally was the driver of the motorcycle. There is no evidence that Richtmyer hesitated in or expressed doubt about his identification of Lally. In light of this evidence, we cannot say that the District Court's findings are clearly erroneous.

¶24    The District Court stated that Richtmyer had "a relatively high degree of certainty" when he identified Lally as the motorcycle driver. The court also noted that Richtmyer's testimony during the hearing was "characterized by a high degree of credible certainty about his photographic identification." Lally disputes these statements, arguing that Richtmyer gave "equivocal" and "qualified" answers which revealed his "uncertainty" and "lack of confidence" in his memory of the driver and the subsequent photo identification. The credibility of witnesses and the weight to be given their testimony, however, are matters for the District Court to determine. *State v. LaGree*, 2007 MT 65, ¶ 29, 336 Mont. 375, ¶ 29, 154 P.3d 615, ¶ 29; *Weaver*, ¶ 24. In this connection, we note that after the parties completed their direct, cross, redirect, and recross examinations of Richtmyer, the District Court questioned him at some length concerning the circumstances under which he viewed the motorcycle driver. Ultimately, the court decided that Richtmyer's certainty about his identification of Lally was highly credible. We will not second-guess the court's assessment simply because Lally's disagrees with it.

¶25    We turn, then, to the ultimate question of whether Meeder's identification procedure, as applied to Richtmyer, created a substantial likelihood of irreparable

11

misidentification. As noted, the Supreme Court has identified five factors which bear on this question; however, these factors are not necessarily the *only* factors which may be considered. *See Biggers*, 409 U.S. at 199, 93 S. Ct. at 382 ("As indicated by our cases, the factors to be considered in evaluating the likelihood of misidentification *include . . . .*" (emphasis added)). Nor is any one factor alone dispositive of the issue. Rather, the evaluation must be based on the totality of all relevant circumstances. *Biggers*, 409 U.S. at 199, 93 S. Ct. at 382.

¶26 Here, Richtmyer, as a law enforcement officer, was trained to observe. Although the conditions under which he viewed the motorcycle driver may have been less than "ideal" (moderate lighting, a distance of 30 to 50 feet, and a relatively brief period of observation), he had a high degree of attention focused on the driver during their face-to-face contact, given that he had been in hot pursuit and was attempting, at that point, to apprehend the driver. He made the identification within 24 hours of the events in question, and he had a relatively high degree of certainty that Lally was the driver. In addition, even if Meeder's identification procedure was impermissibly suggestive, as we have assumed for the sake of argument, Richtmyer testified that he was not influenced by the fact that Lally's photograph was a mugshot while John's was not.

¶27 While we cannot endorse Meeder's procedure as a standard method of conducting photo identifications, especially where the witness is not a law enforcement officer, we conclude that under the totality of the circumstances and the specific facts of this case, Richtmyer's identification of Lally was not so unreliable that the admission of this evidence would have violated Lally's right to due process (had this case gone to trial).

## CONCLUSION

¶28 The District Court did not err in denying Lally's motion to exclude photo-identification testimony by Richtmyer.

¶29 Affirmed.

/S/ JAMES C. NELSON

We Concur:

/S/ JOHN WARNER
/S/ JIM RICE
/S/ W. WILLIAM LEAPHART
/S/ BRIAN MORRIS