FILED

10/25/2016

*Ed Smith*
CLERK OF THE SUPREME COURT
STATE OF MONTANA

Case Number: DA 15-0009

DA 15-0009

IN THE SUPREME COURT OF THE STATE OF MONTANA

2016 MT 266

CITY OF BILLINGS,

        Plaintiff and Appellee

    v.

DONNIE DERRELL NOLAN,

        Defendant and Appellant,

APPEAL FROM:    District Court of the Thirteenth Judicial District,
In and For the County of Yellowstone, Cause No. DC 14-331
Honorable G. Todd Baugh, Presiding Judge

COUNSEL OF RECORD:

      For Appellant:

          Chad M. Wright, Chief Appellate Defender, Alexander H. Pyle, Assistant
Appellate Defender, Helena, Montana

      For Appellee:

          Timothy C. Fox, Montana Attorney General, Katie F. Schulz, Assistant
Attorney General, Helena, Montana

          Brent Brooks, Billings City Attorney, Melanie S. Jack, Deputy City
Attorney, Billings, Montana

Submitted on Briefs:  August 10, 2016

Decided:  October 25, 2016

Filed:

_____
Clerk

Justice Laurie McKinnon delivered the Opinion of the Court.

¶1      Donnie Derrell Nolan (Nolan) was convicted, following a jury trial in the Billings Municipal Court, of reckless driving (in violation of § 61-8-301(1)(a), MCA) and failing to yield to an emergency vehicle (in violation of § 61-8-346(1), MCA).  Nolan appealed to the Thirteenth Judicial District Court, Yellowstone County, arguing that the victim's in-court identification was impermissibly suggestive and unreliable.  Nolan also argued that Officer Boeckel's testimony regarding vehicle registration information received from dispatch was hearsay and inadmissible.[1]  The District Court, confining its review to the record and questions of law, denied Nolan's appeal.  Nolan appeals the District Court's order and reinstatement of his sentence.  We affirm.

¶2      Nolan presents the following issues for review:

*1. Whether the trial court erred in allowing the victim's in-court identification of Nolan at trial.*

*2. Whether the trial court abused its discretion when it admitted testimony concerning vehicle registration information received from police dispatch.*

## FACTUAL AND PROCEDURAL BACKGROUND

¶3      On June 20, 2013, Beth Jones was driving west on Rimrock Road in Billings in her red Dodge Charger.  Her daughter, Emily, was in the passenger seat.  As they turned left onto Rimrock Road, a white car was turning right and honked at them.  Beth saw the car take a sudden U-turn and begin traveling in the same direction as she was.  Using the center turn lane, the white car sped up to the Jones' vehicle.  The white car then pulled

---

[1]  Nolan raised a speedy trial claim in the District Court, but has not pursued it here.

even with the Jones' vehicle and the driver yelled at Beth, "You're a dead bitch." The driver yelled this twice. Beth and Emily identified the white car as a four door Cadillac.

¶4 Beth attempted to flee from the Cadillac by speeding up and slowing down erratically. The driver of the Cadillac cut her off and nearly hit Beth's vehicle several times with his vehicle. Beth honked at other drivers to alert them that she needed help. Beth drove between fifty and seventy miles per hour trying to get away from the Cadillac. Finally, Beth was able to lose the Cadillac by taking a sharp right turn onto a side street. Beth and Emily testified that they were terrified of the driver and thought he was coming after them to hijack their car, hurt them, or both.

¶5 Once they had escaped, Emily called 911 and reported the incident. They described the driver of the white Cadillac as a black male, with short hair, no facial hair, and wearing a white tank-top. During the 911 call Emily and Beth can be heard responding to the emergency operator's questions. Neither Emily nor Beth was able to get the license plate number of the white Cadillac. Emily estimated the age of the driver to be late twenties or early thirties. Beth interjected that, "He was young." As Beth and Emily were parked and speaking to the operator, Beth said the Cadillac just drove by heading east on Rimrock Road.

¶6 Jason Jessen (Jessen) was also driving westbound on Rimrock Road and in his rearview mirror he observed a woman driving a red Charger approaching him at a high rate of speed. Jessen noticed the woman honking and waving and saw she was being chased by a man driving a white Cadillac. Jessen pulled to the side of the road to allow the Charger to pass. He observed that the Cadillac was causing on-coming traffic to pull

3

over to avoid a collision. Jessen stated the Cadillac was driving erratically and swerving intentionally to hit the red Charger. Jessen called 911 and reported what he had seen.

¶7 Officer Jeremy Boeckel (Officer Boeckel) of the Billings Police Department heard dispatch report that two cars, a red Charger and a white Cadillac, were racing down Rimrock Road. While driving westbound on Rimrock Road, Officer Boeckel saw a white, four-door Cadillac traveling eastbound. Officer Boeckel, who was able to observe the driver as the Cadillac passed, described the driver as a black male wearing a white tank-top, with short black hair. Officer Boeckel confirmed the description of the vehicle and driver with dispatch as the vehicle involved in the 911 call. Officer Boeckel turned around and activated his lights and siren. For thirteen blocks, the driver continued to drive leisurely, ignoring the sirens, lights, and the addition of other patrol vehicles. During the pursuit dispatch relayed to Officer Boeckel that the Cadillac's plates came back registered to Sherry Nolan. Officer Boeckel eventually suspended his pursuit upon instructions from his supervising officer and Billings Police Department Policy that officers are not allowed to pursue offenders for traffic offenses.

¶8 Officer Boeckel continued his investigation that day by taking statements from Beth and Emily Jones, Jessen, and talking to other Billing Police Department Officers. After speaking with other officers, Officer Boeckel learned that Nolan frequently drove a white Cadillac. Officer Boeckel viewed a photograph of Nolan and confirmed that the photograph was of the same person that Officer Boeckel had observed driving the Cadillac during the pursuit. Officer Boeckel did not ask Beth or Emily to do a photo

4

lineup, because he was confident of his identification of Nolan based on his own observations.

¶9     Nolan was subsequently charged with reckless driving and failing to yield to an emergency vehicle. On March 20, 2014, Nolan's jury trial began in Municipal Court. On the morning of trial, Nolan notified the Municipal Court of his hearsay objection to Officer Boeckel's expected testimony regarding information from dispatch as to whom the Cadillac was registered. The court reserved its ruling for trial. Nolan also raised objections that he would be the only black male in the courtroom and that he would be seated next to defense counsel at the table for the defendant. The judge replied, "[T]here's nothing I can do about it. What do you want me to do? Get three more defendants in here . . . that are black?" Although Nolan said he did not want any more persons who were black to be brought into the courtroom, he continued to maintain his objection that any identification would be impermissibly suggestive and unreliable.

¶10    The State called four witnesses at trial: Emily and Beth Jones, Jessen, and Officer Boeckel. Neither Jessen nor Emily identified the driver of the Cadillac during their testimony. When Beth identified Nolan at trial, she testified as follows:

> CITY: [When the Cadillac made the U-turn], did you get a look at the driver?
> BETH: I got a brief look at him.
> CITY: And what did he look like?
> BETH: He looked like a black male in his maybe late 20's, mid-30s, somewhere around there.
>                              .    .    .
>
> CITY: After the initial time that you'd seen him, um, turn right as you were exiting MSU-B, um, did you ever get the opportunity to see his face while this chase was going on?

5

BETH: Every time he'd pull up next to me and blocked me in . . .

CITY: Okay.

BETH: . . . I would see his face.

CITY: Okay, and do you have any way to identify him?

BETH: He was a black male that looked like the gentleman sitting over there in the tie and the maroon shirt.

CITY: Okay, and why do you say it looks like him?

BETH: Because that's what he looked like.

DEFENSE: Your honor, I would object to [this in-court identification] . . . .

COURT: Overruled.

CITY: Does he look any different today than the way you recalled him from back in June?

BETH: Mmm, other than his clothing, no.

¶11 Beth admitted that she could not tell, at the time of the incident, whether the driver was clean shaven or not. When she was questioned about her use of the word "young" to describe the driver during the 911 call she explained, "I just meant he was younger than me." However, later when asked what she thought "young" meant, Beth said it meant a teenager.

¶12 Officer Boeckel testified that the Cadillac he observed Nolan driving was registered to Sherry Nolan and explained that he had received the registration information from dispatch in response to the license plate information he had supplied. Defense Counsel objected and the court overruled the objection.[2]

¶13 The jury convicted Nolan of both offences. Nolan appealed his conviction to the District Court on the basis that the in-court identification by Beth was impermissibly

---

[2] Nolan asserts that Officer Boeckel's testimony concerning information received from other officers that Nolan was known to drive a white Cadillac was also inadmissible hearsay. However, Nolan did not raise this argument in the District Court and has raised it for the first time in the instant appeal. We decline to address this particular claim for the first time on appeal. *State v. Herrera*, 1998 MT 173, ¶ 17, 289 Mont. 499, 962 P.2d 1180.

suggestive and unreliable, and that the testimony regarding information received from dispatch was hearsay. The District Court denied both claims. Nolan appeals.

## STANDARD OF REVIEW

¶14 On Nolan's appeal from the Municipal Court, the District Court functioned as an intermediate appellate court. *See* §§ 3-5-303 and 3-6-110, MCA. On Nolan's appeal to this Court, we review the case as if the appeal originally had been filed in this Court. *City of Bozeman v. Cantu*, 2013 MT 40, ¶ 10, 369 Mont. 81, 296 P.3d 461; *State v. Ellison*, 2012 MT 50, ¶ 8, 364 Mont. 276, 272 P.3d 646 (citing *Stanley v. Lemire*, 2006 MT 304, ¶ 26, 334 Mont. 489, 148 P.3d 643). We examine the record independently of the district court's decision, applying the appropriate standard of review. *Ellison*, ¶ 8.

¶15 We treat a motion to exclude an eyewitness' identification as a motion to suppress. *State v. Baldwin*, 2003 MT 346, ¶ 11, 318 Mont. 489, 81 P.3d 488. Our standard of review for a district court's denial of a motion to suppress is whether the court's findings of fact are clearly erroneous, and whether those findings are correctly applied as a matter of law. *Baldwin*, ¶ 11.

¶16 Evidentiary rulings are reviewed for an abuse of discretion. *State v. Hicks*, 2013 MT 50, ¶ 14, 369 Mont. 165, 296 P.3d 1149. A trial court abuses its discretion when it "acts arbitrarily without the employment of conscientious judgment or exceeds the bounds of reason, resulting in substantial injustice." *Hicks*, ¶ 14. To the extent that the court's ruling is based on an interpretation of an evidentiary rule or statute, our review is de novo. *State v. Derbyshire*, 2009 MT 27, ¶ 19, 349 Mont. 114, 201 P.3d 811.

7

## DISCUSSION

¶17    *1. Whether the trial court erred in allowing the victim's in-court identification of Nolan at trial.*

¶18    Nolan argues that Beth's in-court identification of him was impermissibly suggestive and unreliable. Although the issue raised here concerns an in-court identification where no pre-trial identification was made, we deem the considerations and analysis the same when determining whether evidence of the identification was properly admitted.

¶19    A defendant's constitutional right to due process bars the admission of evidence derived from suggestive identification procedures where there is a substantial likelihood of irreparable misidentification. *State v. Lally*, 2008 MT 452, ¶ 15, 348 Mont 59, 199 P.3d 818 (citing *Neil v. Biggers*, 409 U.S. 188, 196–98, 93 S.Ct. 375, 380–81 (1972)). We apply a two-step process for determining whether evidence of an identification is admissible. First, we examine whether the identification procedure was impermissibly suggestive. Second, if the procedure was impermissibly suggestive, we must consider several factors for determining whether the identification is nevertheless reliable under the totality of the circumstances. A defendant must establish both that the identification was impermissibly suggestive and that it was unreliable. *Lally*, ¶ 15. *See Biggers*, 409 U.S. at 198–99, 93 S.Ct. at 381–82; *Baldwin*, 2003 MT 346, ¶ 14; *State v. DuBray*, 2003 MT 255, ¶ 58, 317 Mont. 377, 77 P.3d 247; *State v. Bingman*, 2002 MT 350, ¶ 21, 313 Mont. 376, 61 P.3d 153. We first consider whether Beth Jones' identification testimony was impermissibly suggestive.

¶20 A procedure is unnecessarily suggestive if a positive identification is likely to result from factors other than the witness's own recollection of the crime. *United States v. Greene*, 704 F.3d 298, 306 (4th Cir. 2013). We have recognized that a "'show-up' identification requiring a 'yes or no' answer is a far less desirable situation than positively picking out a person from an anonymous line-up." *State v. Rudolph*, 238 Mont. 135, 141, 777 P.2d 296, 300 (1989). As we cautioned in *Campbell*, "law enforcement agencies [are] ill advised to rely solely on one-to-one showups in identifying suspects with a crime." *State v. Campbell*, 219 Mont. 194, 201, 711 P.2d 1357, 1362 (1985), *cert. denied*, 475 U.S. 1127, 106 S.Ct. 1654.

¶21 Nolan, the only black person in the courtroom, was seated at the defense table next to defense counsel when Beth Jones identified him. There was little question that Nolan was the accused and the person that the State and law enforcement suspected of committing the criminal offenses. Under these circumstances, and in the absence of a pre-trial identification, Jones' identification of Nolan in-court amounted to a "show-up" or "one-to-one" identification, which this Court has condoned on several occasions. *See State v. Schoffner*, 248 Mont. 260, 266–67, 811 P.2d 548, 552–53 (1991); *Campbell*, 219 Mont. at 200, 177 P.2d at 1361; *State v. Higley*, 1990 Mont. 412, 421, 621 P.2d 1043, 1049 (1980). The Second Circuit has found that when a defendant was the only black person in the courtroom, and was seated at the defense table, the in-court identification by three witnesses were "so clearly suggestive as to be impermissible." *United States v. Archibald*, 734 F.2d 938, 942-43 (2d Cir. 1984). "Any witness, especially one who has watched trials on television, can determine which of the individuals in the courtroom is

9

the defendant, which is the defense lawyer, and which is the prosecutor." *Archibald*, 734 F.2d at 941. The court in *Archibald*, however, ultimately found that the presence of other factors guaranteed the reliability of the in-court identification and that any error was harmless because the witness had also identified the defendant in photo arrays prior to trial. *Archibald*, 734 F.2d at 943.

¶22 While we recognize that it is a common practice for an identification to be made in court of the defendant, under the circumstances here, and when the defendant has never been previously identified by the victim, we conclude the in-court identification of Nolan was impermissibly suggestive. Nolan was the only black man in the courtroom; he was the defendant; he was seated next to defense counsel; he was seated at the defense table; and the suspect of the crime was a black male. Further, although the identification made by Jones may not have been in response to a specific question by the prosecutor, we cannot ignore that Jones' identification of Nolan was critical to the State's case. Officer Boeckel's pre-trial identification did not place Nolan at the scene of the offense and only identified Nolan as the driver of a white Cadillac following commission of the offense. We conclude that the circumstances of the in-court identification were unnecessarily suggestive and that Beth's identification likely could have resulted from factors other than her own recollection of the crime.

¶23 Under the second prong, we must determine whether, under the totality of circumstances, the in-court identification gave rise to a "substantial likelihood of irreparable misidentification." *Schoffner*, 248 Mont. at 266, 811 P.2d at 552. *Biggers* sets forth five factors to be considered in evaluating the likelihood of misidentification:

(1) the opportunity for the witness to view the suspect defendant at the time of the crime; (2) the witness' degree of attention at the time; (3) the accuracy of the witness' prior description of the suspect defendant; (4) the level of certainty demonstrated by the witness at the time of identification; and (5) the length of time between the crime and the time of identification. *Biggers*, 409 U.S. at 199-200, 93 S.Ct. at 382; *Lally*, ¶ 19; *Baldwin*, ¶ 15.

¶24 Beth had ample opportunity to observe Nolan. She observed Nolan in the middle of the day when the weather was clear and sunny. Beth had her driver's window down and Nolan's passenger window was down. No one was seated in the passenger seat of Nolan's car who could have obstructed Beth's view of Nolan as he pulled up next to her, and twice yelled she was "a dead bitch." Nolan positioned his vehicle close enough to nearly hit Beth's vehicle several times. The incident lasted several minutes and Beth and Emily provided the dispatcher with a description of Nolan immediately. Beth testified that she recalled the events of June 30, 2013 "very well." She was terrified and believed Nolan was crazy and wanted to either hijack the car, shoot her and Emily, or both. Beth described the color and make of Nolan's vehicle and the sex, gender, race, and clothing of Nolan. Beth's description of Nolan and his vehicle were corroborated by not only Emily, but by the subsequent observations of Officer Boeckel just moments later. Beth testified she was certain about her description and identification of Nolan. During direct and cross examination of Beth there was no evidence suggesting she hesitated in her identification of Nolan. Although the length of time between the offense and trial approached nine months, potentially indicating the identification would be less reliable,

we do not find the length of time dispositive when viewed in the context of the other *Biggers* factors.

¶25 Considering the totality of circumstances, we hold that, although impermissibly suggestive, the in-court identification did not create a substantial likelihood of misidentification. Although the District Court did not specifically apply the *Biggers* factors, it did determine that the identification was "not impermissibly suggestive" and "did not give rise to any mis-identification [sic]." While the District Court erred in finding the in-court identification was not impermissibly suggestive, it correctly determined that the identification was nonetheless reliable. We will affirm a district court when it has reached the right result, even if it has applied the wrong rationale. *State v. Betterman*, 2015 MT 39, ¶ 11, 378 Mont. 182, 342 P.3d 971.

¶26 *2. Whether the trial court abused its discretion when it admitted testimony concerning vehicle registration information received from police dispatch.*

¶27 Nolan argues that the information Officer Boeckel received from dispatch concerning the Cadillac's registered owner was hearsay which does not fall within any exception allowing for its admission. When Nolan appealed his conviction to the District Court, Nolan argued any testimony that Sherry Nolan was the Cadillac's registered owner was inadmissible because the custodian of records for the Department of Motor Vehicles did not lay a proper foundation for the business records exception to apply. *State v. Wurtz*, 195 Mont. 226, 238, 636 P.2d 246, 252 (1981). The State maintains that Officer Boeckel's statements were not hearsay.

12

¶28 "Hearsay is a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted." M. R. Evid. 801(c); *State v. Sanchez*, 2008 MT 27, ¶ 17, 341 Mont. 240, 177 P.3d 444. "A statement is hearsay 'only when the immediate inference the proponent wants to draw is the truth of the assertion on the statement's face. If the proponent can demonstrate that the statement is logically relevant on any other theory, the statement is nonhearsay.'" *Siebken v. Voderberg*, 2015 MT 296, ¶ 22, 381 Mont. 256, 359 P.3d 1073, (citing Edward J. Imwinkelried, Evidentiary Foundations, 153 (1980)); *Sanchez*, ¶ 19. Officer Boeckel's testimony that the Cadillac was registered to Sherry Nolan was not offered to prove the truth of the matter; that is, that the car was registered to Sherry Nolan. The intent of the statement was to explain how Officer Boeckel proceeded with the investigation and how he came to positively identify Nolan from a prior booking photo. "[A] statement offered for the purpose of showing that the statement was made and the resulting state of mind is properly admitted." *Voderberg*, ¶ 22 (citing *Moats Trucking v. Gallatin Dairies*, 231 Mont. 474, 479, 753 P.2d 883, 886 (1988)); *Cartwright v. Scheels All Sports*, 2013 MT 158, ¶ 50, 370 Mont. 369, 310 P.3d 1080 (citing *Murray v. Talmage*, 2006 MT 340, ¶ 13, 335 Mont. 155, 151 P.3d 49). The statement was not offered to prove the registered owner of the Cadillac but, rather, to demonstrate how Officer Boeckel came to positively identify Nolan. The District Court did not abuse its discretion in concluding that the information related to Officer Boeckel from dispatch regarding the registered owner of the Cadillac was admissible.

## CONCLUSION

¶29 The District Court's order affirming the Municipal Court's evidentiary rulings and Nolan's conviction is affirmed.

/S/ LAURIE McKINNON

We Concur:

/S/ MIKE McGRATH
/S/ MICHAEL E WHEAT
/S/ JAMES JEREMIAH SHEA
/S/ JIM RICE