JUSTICE McKINNON,
dissenting.
¶23 I respectfully dissent from the Court’s decision. I believe the Court has misstated the issue in this case. Moreover, I believe that the evidence in the record supports the Justice Court’s restitution award and that the Court misapplies the restitution statutes in reaching a contrary conclusion.
¶24 The Court asserts that Aragon has not challenged the “causal *399 connection” between his offense and Turcotte’s restitution claim. Opinion, ¶ 14. This assertion is perplexing, given that the Court acknowledges in the very next paragraph that “Aragon argued that the only damage he caused was to Turcotte’s garage, that the insurance coverage had compensated Turcotte, and that he was aware of nothing indicating the entire house needed to be repainted.” Opinion, ¶ 15 (emphasis added). The existence of a causal relationship between Aragon’s criminal conduct and Turcotte’s request to have her entire house repainted is the only issue Aragon raised — albeit, as the Court points out, “not with these [exact] words.” Opinion, ¶ 15. Unfortunately, in addressing and resolving this case based on an evidentiary matter that Aragon did not raise, the Court has fundamentally increased the burden on crime victims to establish their right to restitution.
¶25 At the hearing held February 28,2013, Aragon entered pleas of guilty to reckless driving and to driving under the influence of alcohol. The Justice Court then proceeded with sentencing. Near the end of the proceeding, the prosecutor indicated that the State was requesting $3,270.00 in restitution. As support for this amount, the prosecutor referred to the Victim’s Affidavit in Support of Property Financial Loss, which Turcotte had submitted three months earlier. Aragon’s only objection to the requested restitution was: “I thought [my automobile] insurance covered that.... [W]hat I understood was that my insurance... paid for the damages.” The prosecutor explained that the insurance had covered “part” of the loss, and the parties agreed that a restitution hearing would be needed to determine how much of Turcotte’s loss remained unpaid.
¶26 At the March 12, 2013 restitution hearing, Aragon’s counsel argued as follows:
[Aragon’s] insurance company went out, assessed the valuation, did all the repairs that were required of it, and the garage was completely repaired. And it was all covered with his insurance. Now, in her loss statement, she’s asked their entire house be repainted. And, you know, that’s not part of restitution for damage to a garage, even though the house — the garage was attached to the house. So, restitution has been made. It’s been made in full in this case. And there’s no reason that he should be responsible for repainting a house.
The Justice Court rejected this argument. The court concluded that Aragon was liable for the full amount of restitution set forth in Turcotte’s affidavit (i.e., $3,270.00). The court found that Aragon’s insurer had “paid part of the $3,2[70]” and that Aragon, therefore, *400 owed the difference (i.e., $1,910.86).[1]
¶27 Significantly, Aragon never argued that, if his restitution obligation did encompass repainting Turcotte’s entire house, there was insufficient evidence supporting an award of $1,910.86 for that purpose. And, in fact, there is sufficient evidence in the record. As noted, Turcotte submitted an affidavit (pursuant to § 46-18-242, MCA) in which she described her pecuniary loss and the replacement value of that loss.[2] According to the affidavit, the “[f]ull replacement value / repair cost of property taken, destroyed, harmed, or otherwise devalued” is $3,270.00. Although she was not required to substantiate this amount with documentation, see State v. McMaster, 2008 MT 268, ¶¶ 27, 29, 345 Mont. 172, 190 P.3d 302, Turcotte nevertheless attached a September 4, 2012 estimate from Absolute Construction in the amount of $3,270.00, which included the cost of repainting 2,500 square feet of the house “to match current color.” The parties agreed that Aragon’s insurance company had covered repairs to the garage itself in the amount of $1,359.14. Thus, Turcotte sought merely the difference between the Absolute Construction bid and what the insurance company had already covered — equaling $1,910.86 — to cover repainting the remainder of the house.
¶28 Accordingly, the Court’s suggestion that this case is about “conflicting” repair estimates for which there is no “context or explanation,” Opinion, ¶¶ 15-20, is incorrect. No one raised the questions that the Court now poses at ¶ 18 of the Opinion regarding each line item of the two estimates. The parties and the Justice Court understood why there was a difference between the Absolute Construction estimate and the insurance adjuster’s estimate: the former included the cost of repainting the entire house, not just the garage. Aragon never argued that the Justice Court needed to choose one estimate over the other. He never claimed that the evidence before the court was insufficient to establish the cost of repainting the entire house. And he never claimed that $1,910.86 was an unreasonable cost *401 of completing the repairs that Turcotte was claiming.
¶29 What Aragon argued, rather, was that the remaining repairs — repainting the rest of the house — were simply “not part of restitution for damage to a garage.” The substance of his argument is clearly that the damages caused by Aragon’s offenses did not include the house. See State v. Jent, 2013 MT 93, ¶ 13, 369 Mont. 468, 299 P.3d 332 (“a causal relation between the offender’s criminal conduct and the pecuniary loss is the touchstone for determining whether a person or entity is a victim entitled to restitution”). Hence, the Court’s attempt to reframe the issue as whether there is sufficient evidence supporting the amount of the restitution award is unpersuasive. The issue Aragon raised is whether his restitution obligation extended beyond repairs to the garage to include repairs to other parts of the house — which everyone understood would cost him an additional $1,910.86 in restitution. More specifically, the issue is whether the cost of repainting the remainder of Turcotte’s house is part of “the full replacement cost of property taken, destroyed, harmed, or otherwise devalued as a result of [Aragon’s] criminal conduct.” Section 46-18-243(l)(b), MCA. The Justice Court found that it was, and I believe the evidence in the record supports this finding.
¶30 Aragon concedes he unlawfully drove his vehicle recklessly and while tinder the influence of alcohol. Aragon concedes he drove his vehicle off the road and crashed into Turcotte’s garage. Aragon concedes he thereby caused damage to the structure. The notion that the damage could not have extended beyond the garage is wholly implausible, given that the garage was physically attached to Turcotte’s house. Absolute Construction estimated the repairs at $3,270.00. This included repainting the house “to match current color.” Obviously, Turcotte wanted the color of her house to match the color of the repainted garage. The Court opines that there may not have been any need to repaint the rest of the house to match the color of the garage. Opinion, ¶ 19. But even if this were true, it was Aragon’s responsibility to make this argument at the restitution hearing and to present such evidence refuting Turcotte’s claim — neither of which he did, or even attempted to do. It is not this Court’s prerogative to devise evidentiary theories that the defendant himself failed to develop. State v. Whalen, 2013 MT 26, ¶ 32, 368 Mont. 354, 295 P.3d 1055; Citizens for Balanced Use v. Maurier, 2013 MT 166, ¶ 15, 370 Mont. 410, 303 P.3d 794. Nor was it Turcotte’s or the prosecutor’s responsibility to produce any documentation other than her restitution affidavit. McMaster, ¶¶ 27, 29.
¶31 “In reviewing findings of fact, the question is not whether there *402 is evidence to support different findings, but whether substantial evidence supports the findings actually made.” Knowles v. State ex rel. Lindeen, 2009 MT 415, ¶ 21, 353 Mont. 507, 222 P.3d 595 (emphasis in original); accord In re K.J.B., 2007 MT 216, ¶ 23, 339 Mont. 28, 168 P.3d 629. We thus have explained that
[a] finding ... is not clearly erroneous simply because there is evidence in the record supporting a different finding. Rather ..., a finding is clearly erroneous if it is not supported by substantial evidence, if the court has misapprehended the effect of the evidence, or if our review of the record leaves us with a definite and firm conviction that a mistake has been made.
State v. Lally, 2008 MT 452, ¶ 22, 348 Mont. 59, 199 P.3d 818. Here, the only evidence presented to the Justice Court bearing on the issue of restitution — namely, Aragon’s admissions forming the basis of his guilty pleas, and Turcotte’s affidavit with the two gratuitously attached estimates — established the following: (1) that Aragon crashed into Turcotte’s garage, (2) that the garage was physically connected to Turcotte’s house, (3) that Turcotte’s monetary loss totaled $3,270.00, (4) that Aragon’s insurer provided $1,359.14, and (5) that it would cost an additional $1,910.86 to complete the repairs.
¶32 The Justice Court’s finding — that “the full replacement cost of property taken, destroyed, harmed, or otherwise devalued as a result of [Aragon’s] criminal conduct,” § 46-18-243(l)(b), MCA, included the cost of repainting the entire house — is supported by our precedents. In State v. LaTray, 2000 MT 262, 302 Mont. 11, 11 P.3d 116, we held that towing and ambulance services, which had responded to the scene of the defendant’s offense, were entitled to restitution. We reasoned that “LaTray’s criminal acts created a situation in which ambulance and towing services were reasonably necessary for public safety or for the safety of LaTray himself.” LaTray, ¶ 22. Likewise, in Jent, where the defendant had pleaded guilty to assaulting his wife, we held that his restitution liability extended to the medical expenses associated with his wife’s suicide attempt. We explained that “Jent’s conduct created a situation which resulted in medical expenses arising from the compromised mental health of his victim.” Jent, ¶ 18.
¶33 As we stated in Jent, ¶ 12, “restitution is not to be limited by the definition of the offense or to only those injuries arising as a ‘direct’ result of the offense.” Here, Aragon argued that repainting the entire house is “not part of restitution for damage to a garage.” The evidence before the court, however, supported a finding that even if repainting the entire house was not a “direct” result of Aragon’s offenses, it was *403 an indirect result of those offenses: but for his crashing into the garage, there would have been no need to repaint the garage and, so as to match color, the rest of the house to which the garage is attached. Certainly, Aragon could have attempted to refute this connection by presenting evidence that there was no need to repaint the entire house or that the need to repaint the entire house was too “attenuated” from his offense. See Jent, ¶ 13. But Aragon did not do so. Notably absent from the Justice Court record is any evidence presented hy Aragon that any part of Turcotte’s restitution claim should be bifurcated from the total amount that she stated under oath are her damages.
¶34 I disagree with the Court’s suggestions that Turcotte should have been “present to explain” her request and that, because of her absence, Aragon was denied the ability to cross-examine her. Opinion, ¶ 18. The only evidence Turcotte was required to present, and did present, is an affidavit describing her pecuniary loss and the replacement value in dollars of the loss. Section 46-18-242, MCA. We have effectively punished Turcotte for attaching the estimates from Absolute Construction and Aragon’s insurer by holding that these documents — which the statute does not require a victim to provide in the first place, McMaster, ¶¶ 27,29 — somehow created a “conflict” that she should have been “present to explain.” The fact that “no other testimony or evidence was available to be examined or reviewed” by the Justice Court, Opinion, ¶ 20, is entirely Aragon’s responsibility, and he cannot now invoke that omission as a basis for reversing the Justice Court’s restitution award. Aragon had notice of the restitution hearing and notice of the affidavit, and he could have subpoenaed Turcotte or other witnesses in order to refute the amount of her claim. Aragon failed, however, to produce any testimony or even to ask that the matter be continued to secure the necessary evidence. The Court has cited no law requiring Turcotte or the prosecution to produce any more evidence than they did.
¶35 In the absence of any evidence disputing Turcotte’s claim or a request for time to secure the same, the Justice Court was constrained to make a decision based on the evidence before it. In determining that Turcotte should be paid “the full replacement cost of property taken, destroyed, harmed, or otherwise devalued as a result of [Aragon's] criminal conduct,” § 46-18-243(l)(b), MCA, the Justice Court properly followed our precedent that a victim’s sworn affidavit explaining the amount of loss is sufficient to support an order of restitution. McMaster, ¶ 27; Jent, ¶ 21. The practical result of today’s decision will be (1) to discourage victims from attaching documentation to affidavits of pecuniary loss for fear that this Court might perceive a “conflict” in *404 the evidence or (2) to require the State to produce evidence and testimony beyond the victim’s affidavit as a precaution against the defendant’s raising an argument, not supported by evidence, that the restitution award is unreasonable. Because we have reviewed the victim’s invoices in this matter, which were not even necessary, and determined ourselves that the amount or necessity of repainting her house seems unreasonable, we have altered the rules to be followed in restitution proceedings. The victim’s affidavit is sufficient evidence to validate her claim, in the absence of evidence to the contraxy.
¶36 I dissent.

 It is important to clarify that when the Justice Court stated that it “can’t go with [Turcotte’s] letter,” see Opinion, ¶ 7, the court was not referring to Turcotte’s restitution affidavit. Rather, the court was referring to a March 8,2013 letter Turcotte had sent the court indicating that she would be satisfied if Aragon did 40 hours of community service in lieu of restitution. Aragon objected to this disposition, and the Justice Court agreed with him that community service would not be appropriate in lieu of restitution.

 In this regard, I agree with the Court’s rejection of Aragon’s arguments regarding the adequacy of Turcotte’s affidavit. Opinion, ¶ 13.