DA 23-0677

IN THE SUPREME COURT OF THE STATE OF MONTANA

2026 MT 35N

FILED

02/24/2026

Bowen Greenwood
CLERK OF THE SUPREME COURT
STATE OF MONTANA

Case Number: DA 23-0677

JUAN ANASTASIO RODRIGUEZ,

      Petitioner and Appellant,

   v.

STATE OF MONTANA,

      Respondent and Appellee.

APPEAL FROM:   District Court of the Eighth Judicial District,
In and For the County of Cascade, Cause No. BDV-22-0343
Honorable Elizabeth A. Best, Presiding Judge

COUNSEL OF RECORD:

      For Appellant:

            Shandor S. Badaruddin, Shandor S. Badaruddin, PC, Missoula,
Montana

      For Appellee:

            Austin Knudsen, Montana Attorney General, Katie F. Schulz,
Assistant Attorney General, Helena, Montana

            Joshua A. Racki, Cascade County Attorney, Great Falls, Montana

                    Submitted on Briefs:  December 10, 2025

                               Decided:  February 24, 2026

Filed:

_____
                Clerk

Justice Jim Rice delivered the Opinion of the Court.

¶1    Pursuant to Section I, Paragraph 3(c), Montana Supreme Court Internal Operating Rules, this case is decided by memorandum opinion and shall not be cited and does not serve as precedent.  Its case title, cause number, and disposition shall be included in this Court's quarterly list of noncitable cases published in the Pacific Reporter and Montana Reports.

¶2    Juan Anastasio Rodriguez (Rodriguez) appeals from the denial of his petition for postconviction relief (PCR) by the Eighth Judicial District Court, Cascade County, whereby he challenged his 2017 conviction, after jury trial, of one count of sexual intercourse without consent upon J.S., the alleged victim, who was then about 15 years of age.  We affirm.

¶3    Rodriguez appealed his conviction, which was affirmed, and his following petition for rehearing was denied.  *See State v. Rodriguez*, 2021 MT 65, ¶ 3, 403 Mont. 360, 483 P.3d 1080.[1]  Rodriguez's conviction became final on July 19, 2021, when the deadline

---

[1] On direct appeal, Rodriguez argued that the District Court erred by allowing the presentation of combined expert and lay testimony without providing a cautionary jury instruction or notice to Rodriguez's trial counsel, that the District Court violated his due process rights by failing to exclude the prosecutor from a hearing regarding defense counsel's representation, and that trial counsel rendered record-based ineffective assistance of counsel.  *See Rodriguez*, ¶ 2.  Regarding the record-based ineffective assistance of trial counsel claims, Rodriguez faulted trial counsel for (1) failing to call a witness, John Marion, whom Rodriguez requested and (2) failing to elicit statistics on false reports of sexual assault from the State's blind expert during cross-examination.  *See Rodriguez*, ¶ 32.  As to trial counsel's alleged failure to call Marion, neither the State nor trial counsel was able to locate Marion, and nothing in the record showed that the witness would have testified.  Accordingly, the claim was inappropriate for resolution on direct appeal.  *See Rodriguez*, ¶ 33.  As to the failure to elicit false-reporting statistics from the State's blind expert, the record was likewise insufficient to explain why trial counsel did not pursue a line of questioning into false-reporting statistics.  Accordingly, the claim was inappropriate for resolution on direct appeal.  *See Rodriguez*, ¶ 35.  In Rodriguez's PCR petition, discussed further herein, Rodriguez again raises

2

to petition the U.S. Supreme Court for review had passed. *See* § 46-21-102, MCA. On July 13, 2022, Rodriguez signed and mailed to the Eighth Judicial District Court his PCR petition and an affidavit stating he was unable to pay the filing fees. The clerk of the District Court docketed the fee waiver affidavit on July 18, 2022. However, the clerk did not docket the petition until July 26, 2022, when the District Court approved Rodriguez's request to proceed without paying fees.

¶4 Rodriguez raised 63 grounds for relief in his petition, claiming, by categories, ineffective assistance of counsel (IAC) by both trial and appellate counsel, prosecutorial misconduct, bailiff misconduct, court error, and jury misconduct. The two attorneys who had represented Rodriguez at trial submitted an affidavit responding to the allegations of trial counsel IAC. The State answered that Rodriguez's petition was untimely but also responded substantively to Rodriguez's claims.

¶5 On August 23, 2023, the District Court entered an order denying Rodriguez's petition (Order), ruling the petition was untimely, but further explaining that it had reviewed the affidavit of the trial attorneys and, having "observed their performance during the trial," the District Court "finds and concludes that their representation of Rodriguez exceeded all standards and was not deficient." On September 7, 2023, Rodriguez filed a motion to alter or amend the Order pursuant to M. R. Civ P. 59(e) (the Rule 59 Motion), arguing that his PCR petition was timely because the clerk had received it before the

_____

ineffective assistance of trial counsel based on trial counsel's failure to call Marion as a witness (Ground 8) and trial counsel's failure to question the State's blind expert about false reporting statistics (Ground 27).

3

deadline. On October 11, 2023, the District Court received a letter from Rodriguez asking why the District Court had not yet ruled on his Rule 59 Motion. In response, the State agreed that Rodriguez's PCR petition had been timely, but argued Rodriguez was, nonetheless, not entitled to relief on the merits. On November 16, 2023, Rodriguez filed a notice of appeal. On November 17, 2023, the District Court entered an amended order (Amended Order), which granted Rodriguez's motion to amend, but denied the petition on the merits. Rodriguez appeals.

¶6 When reviewing a district court's denial of a petition for postconviction relief, we determine whether the court's findings of fact are clearly erroneous and whether its conclusions of law are correct. *Jackson v. State*, 2025 MT 221, ¶ 11, 424 Mont. 244, 576 P.3d 876 (citing *Hamilton v. State*, 2010 MT 25, ¶ 7, 355 Mont. 133, 226 P.3d 588). Claims of ineffective assistance of counsel present mixed questions of law and fact that we review de novo. *Jackson*, ¶ 11 (citation omitted). Discretionary rulings in postconviction relief proceedings, including rulings related to whether to hold an evidentiary hearing, are reviewed for an abuse of discretion. *Jackson*, ¶ 11 (citing *Hamilton*, ¶ 7).

¶7 Rodriguez raises five issues on appeal: (1) whether the District Court had jurisdiction to issue the Amended Order; (2) whether Rodriguez timely filed his PCR petition; (3) whether trial counsel rendered IAC, in multiple ways; (4) whether appellate counsel rendered IAC; and (5) whether the District Court erred by declining to grant an evidentiary hearing or other relief that would have provided Rodriguez an opportunity to present his claims.

4

¶8    Rodriguez argues the District Court lacked jurisdiction to issue the Amended Order on November 17, 2023, because jurisdiction had transferred to this Court upon his filing of a notice of appeal on November 16, 2023. He explains that his Rule 59 Motion, filed September 7, 2023, was deemed denied after 60 days without a ruling by the District Court, on November 6, 2023, which triggered the appeal period, rendering his November 16, 2023 notice of appeal to this Court timely.[2] Rodriguez argues that only the District Court's initial Order denying the petition is properly on appeal, although he also contends that the District Court retained limited jurisdiction to correct clerical errors, and therefore, its redetermination that his petition was timely filed in the Amended Order properly corrected the initial Order. The State contends that the District Court did not merely correct a clerical error because it added additional findings to its conclusion that the petition should be denied on the merits. The State argues the District Court had authority to issue the Amended Order because it had no notice that Rodriguez had filed an appeal until after its Amended Order was entered, and the Rule 59 Motion was not deemed denied on November 6 because the Eighth Judicial District's Local Rule 7(B) required the filing of a Notice of Issue, which pushed back the deemed-denied date to December 11, 2023. Consequently, the State contends Rodriguez's notice of appeal was premature and ineffective, but that, in any event, regardless of which order is considered on appeal, Rodriguez is not entitled to relief.

---

[2] Rodriguez's argument assumes that a notice of appeal had to be filed within 30 days after November 6, 2023. The State correctly notes an appeal had to be taken in this proceeding within 60 days after November 6, 2023. Section 46-21-203, MCA. However, as Rodriguez filed the notice 11 days after November 6, 2023, his appeal was timely filed.

¶9 We agree that Rodriguez's petition was timely filed. The clerk of the District Court received Rodriguez's PCR petition and the fee waiver affidavit together on July 18, 2022, when the fee waiver was docketed. Filing by mail is complete once the pleading is placed in custody of the clerk of court. *See Lesage v. Twentieth Jud. Dist. Ct.*, 2021 MT 72, ¶ 7, 403 Mont. 476, 483 P.3d 490 (citations omitted). Rodriguez's deadline to file a PCR petition was July 19, 2022, and, accordingly, the petition was timely. *See* § 46-21-102, MCA. We find it unnecessary to resolve the parties' arguments regarding whether the District Court had jurisdiction to issue the Amended Order, and the application of the Eighth Judicial District's Local Rule 7(B), because we have determined that the outcome on the merits of the petition is the same under either order.

¶10 Before reaching the merits of alleged postconviction claims, it is "necessary to determine whether such claims are properly before the court or whether they are procedurally barred." *Hagen v. State*, 1999 MT 8, ¶ 11, 293 Mont. 60, 973 P.2d 233. Postconviction claims may be procedurally barred by either § 46-21-105(2), MCA, or the doctrine of res judicata. *Hagen*, ¶ 11. "In postconviction proceedings, § 46-21-105(2), MCA, precludes consideration of a claim that reasonably could have been raised on direct appeal." *Herman v. State*, 2006 MT 7, ¶ 55, 330 Mont. 267, 127 P.3d 422. We will not address issues raised for the first time on appeal. *Ford v. State*, 2005 MT 151, ¶ 12, 327 Mont. 378, 114 P.3d 244 (citing *Griffin v. State*, 2003 MT 267, ¶ 15, 317 Mont. 457, 77 P.3d 545). Further, this Court will not address unsupported arguments or develop and articulate arguments for parties on appeal. *Herman*, ¶ 22 (citing *State v. Kearney*, 2005 MT 171, ¶ 16, 327 Mont. 485, 115 P.3d 214).

6

¶11 In his PCR petition, Rodriguez claimed relief upon 63 different grounds. Of those, Rodriguez raised 6 prosecutorial misconduct claims (Grounds 29–34), 7 alleged court errors (Grounds 36–40, 60, and 62), 1 juror misconduct claim (Ground 42), and 1 bailiff misconduct claim (Ground 35). The remaining grounds alleged IAC by trial counsel and appellate counsel.

¶12 Regarding the categories of claims of prosecutorial misconduct, court errors, juror misconduct, and bailiff misconduct, Rodriguez did not raise any of these issues in his direct appeal. *See Rodriguez*, ¶ 2. When a petitioner has been afforded the opportunity for direct appeal of the conviction, grounds for relief that were or could reasonably have been raised on direct appeal may not be raised, considered, or decided in a postconviction proceeding. Section 46-21-105(2), MCA; *Hagen*, ¶ 12 ("Section 46-21-105(2), MCA [], provides that grounds for relief which reasonably could have been raised on direct appeal may not be raised thereafter in a petition for postconviction relief."). Rodriguez could have raised these claims on direct appeal, and they, accordingly, are procedurally barred from postconviction relief.

¶13 Grounds 1–28, 41, and 59 relate to trial counsel IAC, involving Rodriguez's two trial attorneys. Rodriguez does not provide appellate argument on all of these grounds. Rather, he advances 10 claims of trial counsel IAC: Claim 1—trial counsel was ineffective for failing to effectively confront witnesses J.S. and her therapist, Ladd-Maxwell (relating to Grounds 2, 3, and 19); Claim 2—trial counsel was ineffective for failing to effectively impeach the allegations that J.S. and Evans, J.S.'s friend, saw Rodriguez's truck parked outside J.S.'s apartment in 2008 (relating to Ground 10); Claim 3—trial counsel was

7

ineffective for failing to confront J.S. regarding the date she alleged the assault occurred (relating to Grounds 16 and 37);[3] Claim 4—trial counsel was ineffective for promising the jury a "he said-she said" defense but not allowing Rodriguez to testify (relating to Ground 15); Claim 5—trial counsel was ineffective for failing to object to J.S.'s in-court identification of Rodriguez (relating to Ground 26); Claim 6—trial counsel was ineffective for failing to exercise a peremptory challenge against juror Underwood (relating to Ground 24); Claim 7—trial counsel was ineffective for failing to object to the State's vouching for Paliga, Rodriguez's jail mate, or, in the alternative, for failing to confront him (relating to Ground 25); Claim 8—trial counsel was ineffective for failing to investigate J.S.'s allegedly false claims of prior sexual abuse (relating to Ground 6); Claim 9—trial counsel was ineffective for failing to communicate sufficiently with Rodriguez such that he was constructively denied his right to counsel (relating to Ground 1); and Claim 10—trial counsel was ineffective for failing to object to improper expert medical testimony by Detective Slaughter and for failing to object to a jury instruction the District Court gave in response to Paliga's testimony regarding Rodriguez's prior felonies (relating to Ground 23). While these 10 Claims incorporate, either explicitly or by description, one or more of the original 63 grounds, many of the 63 original grounds are not carried forward with supporting argument into the Claims made on appeal. Specifically, Rodriguez does not raise or argue on appeal the following numbered trial IAC grounds from the PCR

---

[3] Ground 37 is not a standalone trial IAC claim but provides details supporting Rodriguez's arguments relating to Ground 16, which is such a claim.

petition: 4–5, 7–9, 11–14, 17–18, 20–22, 27–28, 41, and 59.[4]  Because they are not raised or supported on appeal, we do not consider them.  *See Ford*, ¶ 35.  Finally, Rodriguez also argues he was prejudiced by the cumulative effect of all the above-described instances of trial IAC.

¶14     Further, a petitioner may not change theories or raise new issues on appeal that were not presented to the district court.  *See Griffin*, ¶ 15; *State v. Wetzel*, 2005 MT 154, ¶ 13, 327 Mont. 413, 114 P.3d 269 ("It is well-established that this Court will not address either an issue raised for the first time on appeal or a party's change in legal theory.").  Several trial IAC claims Rodriguez now raises on appeal were not stated in his PCR petition, specifically: Claim 4 asserts a constitutional claim not originally described in his PCR petition; Claim 7 adds an alternative theory regarding a failure to confront Paliga, which was not presented in the PCR petition; Claim 8 adds two allegations that J.S. falsely claimed her mother had secret sexual relationships with J.S.'s boyfriend and with another man, which were not presented in the PCR petition;[5] and Claim 10 adds the claim that trial counsel was ineffective for failing to object to the improper instruction the District Court gave in response to Paliga's testimony regarding Rodriguez's prior felonies as such a claim

---

[4] Notably, grounds 8 and 27 involve the ineffective assistance of trial counsel claims that Rodriguez raised on direct appeal.  *See Rodriguez*, ¶¶ 2, 32–36.

[5] Although Rodriguez discussed in Ground 19 that J.S. "made sexual misconduct claims" involving J.S.'s mother and J.S.'s boyfriend, he did not argue that such claims were false.  In contrast, Claim 8, as argued on appeal, focuses explicitly on false claims of sexual misconduct.  Moreover, Ground 19 primarily concerned impeachment evidence against J.S. related to a car crash and is wholly unrelated to false sexual abuse allegations.  *Herman*, ¶ 22.

was not argued for in Rodriguez's PCR petition. Accordingly, these claims, either in whole or in part, as the case may be, are not considered.

¶15 Regarding the remaining trial counsel IAC claims argued on appeal, that is, Claims 1, 2, 3, 5, 6, portions of 7 and 8, 9, and a portion of 10, the governing standards provide that "a petitioner seeking to reverse a district court's denial of a petition for postconviction relief based on a claim of ineffective assistance of counsel bears a heavy burden." *Whitlow v. State*, 2008 MT 140, ¶ 21, 343 Mont. 90, 183 P.3d 861 (citation omitted). This Court applies the two-pronged test set forth in *Strickland v. Washington*, 466 U.S. 668, 104 S. Ct. 2052 (1984), in review of IAC claims. *Jackson*, ¶ 15 (citation omitted). The two-prong test of *Strickland* requires a petitioner to show (1) that counsel's performance was constitutionally deficient, and (2) that counsel's deficient performance prejudiced the defense such that it deprived the petitioner of a fair trial. *Jackson*, ¶ 15 (citation omitted). An attorney's performance is deficient if their "conduct fell below an objective standard of reasonableness measured under prevailing professional norms and in light of the surrounding circumstances." *Whitlow*, ¶ 20. However, there is a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance, and the defendant "must overcome the presumption that, under the circumstances, the challenged action might be considered sound trial strategy." *Strickland*, 466 U.S. at 689, 104 S. Ct. at 2065; *Hamilton*, ¶ 16. To establish *Strickland*'s second prong, prejudice, the defendant must demonstrate a reasonable probability that, but for counsel's deficient performance, the result of the proceeding would have been different. *Jackson*, ¶ 17 (citing *Strickland*, 466 U.S. at 687, 104 S. Ct. at 2064). "'A reasonable probability is a probability sufficient

to undermine confidence in the outcome.'" *Jackson*, ¶ 17 (quoting *Strickland*, 466 U.S. at 694, 104 S. Ct. at 2068).

¶16 In Claim 1, Rodriguez argues that trial counsel was ineffective for failing to effectively confront and cross-examine the State's primary witness, alleged victim J.S., and her therapist, Ladd-Maxwell. Rodriguez contends that trial counsel had access to medical records demonstrating J.S.'s inconsistent statements about the assault, memory loss, somatization, pseudoseizures, and attention-seeking behavior, yet failed to use this information to impeach J.S.'s credibility; did not effectively challenge the State's characterization of Ladd-Maxwell's treatment of J.S. as routine medical care; failed to rebut the State's explanation that J.S.'s 12-year delay in disclosure of the sexual assault was due to her strict Christian upbringing by confronting J.S. with evidence of household dysfunction, including her mother's unfaithfulness and her father's drug use; and did not challenge J.S.'s testimony by highlighting her tendency to imagine symptoms after reading warnings on drug labels.

¶17 "This Court accords great deference to defense counsel's exercise of judgment in determining appropriate defenses and trial strategy." *Oliphant v. State*, 2023 MT 43, ¶ 43, 411 Mont. 250, 525 P.3d 1214 (citation omitted). There is a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance and hindsight review of counsel's performance is highly deferential. *See Whitlow*, ¶ 15; *Oliphant*, ¶ 39. The question is not merely whether counsel's conduct flowed from strategic decisions and trial tactics but, rather, whether it was based on "reasonable" or "sound" professional judgment. *Whitlow*, ¶ 19 (citations omitted). Rodriguez must

11

nonetheless overcome a strong presumption that his counsel's defense strategies and trial tactics fall within a wide range of reasonable and sound professional decisions. *Weaver v. State*, 2005 MT 158, ¶ 15, 327 Mont. 441, 114 P.3d 1039. This Court will not second-guess counsel's tactical decisions with the benefit of hindsight, particularly where there are plausible reasons for limiting the scope of cross-examination of J.S. and Ladd-Maxwell. *See Oliphant*, ¶ 29; *Weaver*, ¶ 25.

¶18 Rodriguez's complaints in Claim 1 pertain to matters of trial tactics and strategy. Chief among those reasons is the reasonable strategic concern that a more aggressive inquiry into J.S.'s significant mental health struggles and related records could have opened the door for the State to attribute those issues to trauma caused by the alleged sexual assault itself—an anal rape physically forced upon a 15-year-old teenage girl by an adult man in his car. Such calculated choices, particularly related to a sensitive subject, necessarily require the careful consideration of counsel. The record reveals that, during cross-examination of J.S., trial counsel effectively highlighted several material inconsistencies in J.S.'s account of the alleged assault, including discrepancies regarding the timing of the incident, her recollection of the vehicle, and details suggesting that the assault could not have physically occurred in the manner J.S. described. We are not persuaded that the approach taken by counsel in these circumstances fell outside the wide range of reasonable professional judgment. Even assuming error, we are not persuaded that an alternative approach would have provided a reasonable probability of a different outcome, especially in view of the elements of counsel's cross-examination that did attack core aspects of J.S.'s allegations.

¶19     Rodriguez faults trial counsel for failing to challenge the State's characterization of Ladd-Maxwell's treatment of J.S. as "routine" because, among other things, Ladd-Maxwell treated J.S. for imaginary reactions to medications and that J.S. likely required a "psychiatric admission." However, trial counsel, in their affidavit, explained they determined these issues would be ineffective arguments based on trial strategy. The mere fact that defense counsel declined to pursue a particular line of cross-examination or to assert a specific defensive tactic is generally insufficient, standing alone, to establish that counsel's performance was constitutionally deficient, particularly where plausible reasons exist for limiting the scope of cross-examination. *See Jackson*, ¶ 32; *Oliphant*, ¶ 43. Accordingly, we conclude that Claim 1 does not provide a basis for postconviction relief.

¶20     In Claim 2, Rodriguez argues trial counsel rendered ineffective assistance by failing to impeach J.S. and her friend, Evans, regarding their testimony that, in 2008, they observed Rodriguez's black truck, bearing the logo "J.R.'s Roofing and Siding," parked outside J.S.'s apartment. Rodriguez contends trial counsel could have confronted J.S. and Evans with evidence establishing that he was out of state between 2005 and 2009, had not purchased the truck until 2009, did not apply the logos until 2011, and did not formally register the business name with the Secretary of State until 2011, and that counsel's failure to highlight these timeline discrepancies permitted allegedly false testimony to go unchallenged. The State correctly observes that, even assuming trial counsel possessed documentation establishing that Rodriguez purchased the truck in 2009 and applied the logos in 2011, Rodriguez has not demonstrated that either J.S. or Evans possessed personal knowledge to testify about these items such that they could have responded to or refuted

13

that information.  More importantly, trial counsel did cross-examine both J.S. and Evans and elicited testimony that neither J.S. nor Evans actually saw Rodriguez at the time of the alleged events, and elicited testimony that emphasized benign, innocent explanations for the presence of the work truck outside J.S.'s apartment, such as the possibility that another employee had driven it or that it had simply been parked next to a nearby hardware store. Again, there is a strong presumption that trial counsel's conduct fell within the range of professionally competent assistance, *see Strickland*, 466 U.S. at 689, 104 S. Ct. at 2065, and *Hamilton*, ¶ 12, and we conclude that Rodriguez has not overcome this presumption, nor demonstrated that, but for counsel's failure to pursue the particular avenues of cross-examination now offered, the result of the proceeding would have been different. *See Weaver*, ¶ 20; *Jackson*, ¶ 29.  Accordingly, Claim 2 provides no basis for relief.

¶21    Under Claim 3, Rodriguez contends that trial counsel was ineffective for failing to impeach J.S. regarding the date of the alleged assault, pointing to her multiple prior statements, including a recorded interview with Detective Slaughter and testimony from a friend, that the assault probably occurred in the spring of 2002, but no later than April 2003. Rodriguez argues that, because the assault allegedly occurred in a Honda Civic and he did not purchase or register his Honda Civic until June 27, 2003, J.S.'s trial testimony placing the assault sometime after that date was impossible if her earlier statements were accurate. Rodriguez contends that trial counsel possessed evidence of these prior inconsistent statements and the purchase date of the Honda Civic but failed to introduce it or use it to confront J.S. or Detective Slaughter.

14

¶22 The State responds that Rodriguez has not shown that J.S. possessed personal knowledge of when Rodriguez purchased or registered the Honda Civic, and without personal knowledge, J.S. could not properly testify as to that contention. Moreover, the State points out that trial counsel did challenge J.S.'s timeline, including highlighting inconsistencies in her recollections and contrasting her testimony with that of other witnesses. Additionally, Stephens, Rodriguez's roommate, provided testimony that Rodriguez had possessed the Honda Civic for some period prior to its registration in June 2003. Detective Slaughter explained at trial on direct that any reference in his report to a 2002 date resulted from a mathematical error on his part, and he corrected the timeline accordingly. The jury was thus presented with an explanation for the apparent discrepancy and change in timeline that it was free to accept or reject. Further, defense counsel's cross-examination of J.S. challenged J.S.'s credibility on the timing of the alleged assault without relying on matters outside J.S.'s personal knowledge, such as the precise date Rodriguez acquired or registered the Honda Civic. "It is well within the norms of reasonable professional conduct for counsel to limit their cross-examination to the facts of the case rather than resorting to speculation unsupported by evidence." *McGarvey v. State*, 2014 MT 189, ¶ 30, 375 Mont. 495, 329 P.3d 576 *overruled in part on other grounds by State v. Severson*, 2024 MT 76, ¶ 16 n.5, 416 Mont. 201, 546 P.3d 765. Accordingly, we conclude Claim 3 provides no basis for relief.

¶23 Regarding Claim 5, Rodriguez contends, citing *City of Billings v. Nolan*, 2016 MT 266, 385 Mont. 190, 383 P.3d 219, that trial counsel rendered IAC by failing to object to J.S.'s in-court identification, which occurred approximately fifteen years after the alleged

15

offense. Rodriguez argues that this identification was impermissibly suggestive because Rodriguez was obviously the defendant seated at the defense table. He further argues that this identification carried a substantial likelihood of irreparable misidentification given the lengthy delay between the alleged assault and the identification, the absence of any prior description provided by J.S., and the lack of evidence regarding her degree of attention during the alleged assault. However, the circumstances of J.S.'s in-court identification of Rodriguez are readily distinguishable from the circumstances of the in-court identification found in *Nolan*. In *Nolan*, the victim had never previously identified the defendant. *See Nolan*, ¶ 22. Here, by contrast, the in-court identification occurred at the conclusion of J.S's direct examination, following an admission of a photograph she had personally taken of Rodriguez in 2005. Moreover, and also in contrast to the victim in *Nolan*, J.S. had substantial prior knowledge of Rodriguez: she knew his name, that he was an airman rooming with Stephens, where he lived and worked in 2003, and the specific vehicles he drove. "A defense counsel's use of objections lies within his or her discretion," and it's "not beyond the realm of reasonableness that defense counsel would not object during certain times of the trial so as not to confuse the jury or bring undue attention to the prosecution's case." *Clausell v. State*, 2005 MT 33, ¶ 20, 326 Mont. 63, 106 P.3d 1175 (citations omitted). Accordingly, we conclude Claim 5 provides no basis to grant postconviction relief.

¶24 Regarding Claim 6, Rodriguez contends trial counsel was ineffective for failing to exercise a peremptory challenge, as opposed to a for-cause challenge, against juror Underwood, who indicated unfavorable responses and later served as jury foreperson.

16

Rodriguez asserts that trial counsel provided no strategic explanation for retaining juror Underwood beyond the fact that juror Underwood claimed he could be fair and impartial and that the decisions to challenge or retain jurors were made solely by trial counsel without any input from Rodriguez. In their affidavit, however, trial counsel explained that Rodriguez provided input into the use of peremptory challenges, that Rodriguez did not raise any concerns about juror Underwood during trial, and that juror Underwood stated he could be fair and impartial. Decisions concerning the exercise of peremptory challenges "are essentially a matter of trial strategy" and therefore are entitled to deference. *State v. Herrman*, 2003 MT 149, ¶ 31, 316 Mont. 198, 70 P.3d 738; *see also Oliphant*, ¶ 43. "[P]eremptory challenges involve a very different dynamic than challenges for cause . . . [and] are essentially a matter of trial strategy." *Herrman*, ¶ 31. As we further explained:

> When counsel is exercising peremptory challenges, he or she is engaging in a chess game with opposing counsel. In exercising each challenge, he or she must keep an eye on the end result. That is, which twelve individuals are going to end up constituting the jury. This entails considerable prioritizing. Counsel must keep one eye on who is eliminated by virtue of his or her challenge and the other eye on the composition of the remaining twelve jurors. Counsel also has to second guess which juror will be challenged by the State in its next move.

*Herrman*, ¶ 31. Rodriguez's argument essentially boils down to the contention that trial counsel should have exercised a peremptory strike against juror Underwood to the exclusion of other potential jurors. Yet Rodriguez provides no evidence in the record demonstrating that trial counsel's decision to retain Underwood stemmed from incompetence rather than tactical reasons. *See Yarborough v. Gentry*, 540 U.S. 1, 8,

17

124 S. Ct. 1, 5 (2003) (per curiam) ("When counsel focuses on some issues to the exclusion of others, there is a strong presumption that he did so for tactical reasons rather than through sheer neglect."). The dynamics at play in the exercise of peremptory challenges, including highly discretionary, tactical judgments made in the heat of the moment, underscore the presumption that counsel's trial decisions fall within a wide range of professionally competent assistance. Based on Underwood's responses to inquiries from both the State and trial counsel during voir dire, trial counsel concluded that Underwood could serve fairly and impartially, and decided that peremptorily challenging other jurors was a superior strategic choice. We see nothing of record that would necessitate a contrary determination. Juror Underwood's answers included statements that could be considered beneficial for the defendant. Rodriguez has not demonstrated that trial counsel's failure to remove Underwood fell outside of the wide range of professionally competent assistance.

¶25 Regarding the portion of Claim 7 that is considered on appeal, Rodriguez contends trial counsel rendered IAC by failing to object to the State's improper vouching for the credibility of witness Paliga, Rodriguez's fellow inmate in a jail pod while awaiting trial. Rodriguez argues that the prosecutor impermissibly commented on Paliga's credibility in closing arguments by asserting that Paliga testified not due to a motive for leniency in his own pending prosecution, but rather out of being a "good citizen." Rodriguez asserts that such direct commentary on a witness's credibility constitutes reversible error and that no reasonable defense attorney would have failed to object.

¶26 Prosecutors enjoy a wide latitude to present and elicit relevant incriminating evidence and may properly comment on and argue *"for any position or conclusion*

18

regarding the nature, quality, or effect of the evidence in relation to the applicable law and the prosecutor's burden of proof." *State v. Miller*, 2022 MT 92, ¶ 22, 408 Mont. 316, 510 P.3d 17 (internal quotations and citations omitted, emphasis in original). Objections during closing are matters of professional discretion, and counsel may reasonably decline to object to avoid emphasizing the prosecution's case. *Clausell*, ¶ 20. There is a strong presumption that trial counsel's decision to not object during closing arguments falls within the wide range of reasonable professional assistance. *See Whitlow*, ¶ 21. Paliga testified that he came forward with information despite receiving no plea deal in his own case and faced the risk of being labeled a "snitch" in jail. The prosecutor's reference to Paliga as a "good citizen" was a permissible inference drawn from evidence rather than an impermissible expression of personal opinion on Paliga's veracity. *See State v. Aker*, 2013 MT 253, ¶ 26, 371 Mont. 491, 310 P.3d 506 (a prosecutor may suggest to the jury inferences which may be drawn from witness testimony). Moreover, even assuming that an objection to the prosecutor's statement would have been sustained, Rodriguez has failed to establish prejudice. He has not demonstrated a reasonable probability that but for counsel's failure to object the result of the proceeding would have been different. *Jackson*, ¶ 17. Accordingly, we conclude the portion of Claim 7 that is considered on appeal provides no basis for relief.

¶27 Regarding the portion of Claim 8 that is considered on appeal, Rodriguez argues that trial counsel was ineffective for not investigating whether J.S. falsely accused her uncle of sexually assaulting her at age three. Rodriguez contends that, although trial counsel interviewed the medical provider (State witness Bottomly) whose notes mentioned the

19

alleged assault, trial counsel failed to request a pretrial evidentiary hearing under *State ex rel. Mazurek v. Fourth Jud. Dist. Ct.*, 277 Mont. 349, 922 P.2d 474 (1996) and § 45-5-511(3), MCA, to establish the accusation's falsity and secure its admissibility at trial.

¶28    "We assess a decision not to investigate for reasonableness in light of all of the circumstances of the case, applying a heavy measure of deference to counsel's judgments." *Weaver*, ¶ 17 (internal quotations and citation removed).  Counsel is not ineffective simply because counsel failed to conduct an investigation into possible exculpatory evidence. *Weaver*, ¶ 17.  Here, as the State points out, the only evidence Rodriguez identifies is a handwritten note in Bottomly's session records stating "[J.S.]—victim of sexual assault when 3 yo."  Nothing in that note, or anywhere else in the record, suggests that J.S.'s statement was false or that she fabricated the accusation against her uncle.  Trial counsel followed up by interviewing Bottomly, who confirmed there was no basis to conclude the accusation was false.  Without evidence of falsity, and as trial counsel points out in their affidavit, trial counsel had no viable grounds to seek a *Mazurek* hearing or to pursue admission of the allegation.  "In cases where counsel fails to conduct adequate pretrial investigation we focus our inquiry as to what information would have been obtained from such investigation and whether such information would have produced a different result." *Weaver*, ¶ 21 (citation omitted).  Ignoring admissibility issues presented by Montana's Rape Shield law, § 45-5-511, MCA, Rodriguez has not demonstrated that additional investigation by trial counsel into alleged false accusations would have produced different results.  Accordingly, Claim 8 provides no basis for relief.

20

¶29 Regarding Claim 9, Rodriguez argues that he was constructively denied his right to counsel under the Sixth Amendment because communication with trial counsel was so compromised that he was effectively denied counsel. He contends the complete breakdown of communication amounted to structural error, making the trial fundamentally unfair. Alternatively, he claims counsel's performance was deficient by failing to consult him or allow him to participate in decision making.

¶30 Trial counsel's affidavit directly contradicts Rodriguez's contentions of inadequate communication. Trial counsel stated that they devoted significant time to developing and discussing defense strategies, reviewed Rodriguez's extensive prior counsel records, and, notably, called Rodriguez multiple times per week throughout the entire case. The District Court, noting it had personally observed trial counsel's performance at trial, reviewed their affidavit and found in the Order that their representation of Rodriguez "exceeded all standards" and was not deficient.

¶31 While a defendant is entitled to effective assistance of counsel with whom an adequate defense can be presented, there is no constitutional right to a "meaningful relationship" with counsel. *State v. Johnson*, 2019 MT 34, ¶ 17, 394 Mont. 245, 435 P.3d 64. This Court accords great deference to counsel's exercise of judgment in determining trial strategy, and a claim that counsel could have communicated more is insufficient to establish deficient performance. *See Oliphant*, ¶ 43 ("[T]he *Whitlow* Court specified that how counsel performed at the time of the alleged shortcoming is the relevant period of analysis."). In other words, the proper focus for evaluating counsel's performance is how counsel acted at the time of the alleged deficiency, not on later speculation about whether

21

more or better communication might have been possible. Given trial counsel's affidavit, and the District Court's finding therefrom regarding performance of trial counsel, we cannot conclude the District Court clearly erred in its assessment. *Whitlow*, ¶ 21.

¶32 Regarding the portion of Claim 10 that is considered on appeal, Rodriguez argues that trial counsel rendered IAC by failing to object to Detective Slaughter providing unqualified expert opinion testimony that physical evidence of trauma to the vagina or anus was "very unlikely" due to their quick healing properties. Rodriguez contends that this testimony constituted improper expert medical opinion from a lay witness and that no reasonable counsel would have failed to object. He asserts that the failure to object was deficient performance directly contrary to his defense theory, as the absence of physical findings was a key point and allowing an unqualified officer to explain such medical details bolstered the State's case without challenge.

¶33 "We do not consider unsupported arguments; nor do we have an obligation to formulate arguments or locate authorities for parties on appeal." *Herman*, ¶ 22 (citation omitted). Beyond a mere recitation of what Detective Slaughter said at trial, Rodriguez provides no substantive legal authority or analysis demonstrating that the testimony from Detective Slaughter was objectionable as unqualified expert opinion or that an objection would have been sustained. Accordingly, the portion of Claim 10 that is considered on appeal lacks merit and provides no basis to grant postconviction relief.

¶34 Regarding the cumulative effect of trial counsel's alleged deficiencies, Rodriguez contends he was prejudiced by the combined impact of the above-described claims of IAC for trial counsel, citing *Sanders v. Ryder*, 342 F.3d 991 (9th Cir. 2003). He argues that the

22

combined deficiencies created a reasonable probability of a different outcome, rendered the proceeding fundamentally unfair, and established prejudice. However, as set forth above, Rodriguez's trial IAC claims lack merit. We have explained that "[t]he cumulative error doctrine applies only when an appellant establishes multiple errors that collectively prejudice his due process rights." *State v. Marfuta*, 2024 MT 245, ¶ 21, 418 Mont. 353, 557 P.3d 1260 (citations omitted). We conclude there is no accumulating error that requires reversal here.

¶35 Regarding IAC of appellate counsel, Rodriguez raised 18 such claims in his PCR petition: Grounds 43–58, 61, and 63. On appeal, Rodriguez notes that the District Court did not specifically address his claims of ineffective assistance of appellate counsel. However, Rodriguez offers no argument that identifies any specific error committed by appellate counsel, or explains how any such error fell outside the wide range of professionally competent representation, or shows how the alleged errors prejudiced him. In fact, Rodriguez's argument is conditional: he contends that if this Court were to determine that certain of his underlying IAC claims were record-based (and therefore could and should have been raised by appellate counsel on direct appeal), then those omitted claims would have been stronger than the IAC claims that appellate counsel actually chose to present on direct appeal. However, such a brief general comparison does not satisfy the burden of overcoming the presumption in favor of appellate counsel's performance, including the assessment of the strongest issues to raise. Insufficient support for an individual issue may be a consequence of raising numerous issues, instead of heeding the instruction provided by the Rules of Appellate Procedure, which provide that parties "are

23

encouraged to limit the number of issues to 4 or fewer." M. R. App. P. 12(1)(b). As noted above, this Court cannot develop and articulate arguments for parties on appeal. *Herman*, ¶ 22.

¶36 With regards to whether the District Court abused its discretion by declining to grant an evidentiary hearing, Rodriguez argues that copying limitations, combined with his indigency and pro se status, effectively denied him adequate, effective, and meaningful access to the courts. Rodriguez claims that these limitations prevented him from producing and submitting 388 pages of additional exhibits, such as, for example, commentary from another doctor to rebut the State's expert witness. Rodriguez further argues that the District Court abused its discretion by denying his motion for a standing order to compel the copying of such documents, without considering alternatives, such as an evidentiary hearing or waiver of copy requirements, which would have allowed him to present evidence, and that, by issuing its denial order just 24 hours after service of the State's response and trial counsel's affidavit, the District Court deprived Rodriguez of any opportunity to rebut the factual claims made in the State's response and trial counsel's affidavit.

¶37 Rodriguez's principal complaint is that the District Court refused to compel the Department of Corrections or Montana State Prison to provide free copies of 388 additional pages of exhibits (totaling 1,164 pages when copied for all required parties) that he wished to file after submitting his PCR petition. Yet Rodriguez offered no explanation why some portion of these materials could not have been attached to the original petition. Section 46-21-104(1)(c), MCA, requires neither "volume" nor exhaustive

supplementation; it requires only that the petition identify the supporting facts and attach the evidence necessary to establish them. *Herman*, ¶ 17. Rodriguez has failed to do so. In any event, the record before the District Court, including the PCR petition, trial counsel's affidavit, and the State's response, contained ample information to understand and assess Rodriguez's ineffective assistance of counsel claims on the merits, and we conclude there was no abuse of discretion. *See Hamilton*, ¶ 11 ("[A] district court may dismiss a petition for postconviction relief without ordering a response if the petition, files, and records 'conclusively show that the petitioner is not entitled to relief.'"). For these reasons, the District Court acted within its discretion in dismissing the PCR petition without an evidentiary hearing or other relief.

¶38    We have determined to decide this case pursuant to Section I, Paragraph 3(c) of our Internal Operating Rules, which provides for memorandum opinions. The District Court's findings were not clearly erroneous, its conclusions of law were correct, and it did not abuse its discretion.

¶39    Affirmed.

/S/ JIM RICE

We Concur:

/S/ CORY J. SWANSON
/S/ LAURIE McKINNON
/S/ BETH BAKER
/S/ INGRID GUSTAFSON